### GLADYS HUTCHERSON ET AL. v. SOVEREIGN CAMP, WOODMEN OF THE WORLD.

No. 3918.   Decided April 20, 1923.

(251 S. W., 491.)

**Insurance—Contract—Death Caused by Beneficiary—Accident—Self Defense.**

Plaintiff sued to recover on a contract of insurance by defendant, a fraternal beneficiary association, upon the life of her husband, of which she was the beneficiary.   The contract (beneficiary certificate) provided that "If the member holding this certificate . . . should die . . . by the hands of the beneficiary . . . named herein except by accident . . . this certificate shall be null and void," with forfeiture of all payments and benefits.   The case was tried on an agreed statement of facts showing that the husband was killed by plaintiff in justifiable self defense,—he, at the time, following prolonged quarrels, advancing upon her with an axe in his hands, whereupon she drew a pistol from under the pillow of her bed and shot him.   *Held*:

(1)   In trial upon an agreed statement of facts the courts are without power to draw any inference of fact not necessarily arising from the facts agreed on .(p. 555).

(2)   The burden of establishing the fact that the death, though by act of the beneficiary, was not an accidental one was on the insurer, the proviso exempting him from liability being a conditional one.   Grand Fraternity v. Melton, 102 Texas, 401, followed.   Travelers Ins. Co. v. Harris, 212 S. W., 932, distinguished.   (pp. 556, 557).

(3)   Accident, as used in this contract, means an event not to be expected or anticipated in the light of common experience and existing circumstances —an unusual event, if caused through human agency, occurring without intention on the part of the person affected by such event.   (p. 557).

(4)   The agreed statement showing a *prima-facie* right of recovery, by the death of insured during the life of insurer's contract, the beneficiary must recover unless the agreed facts necessarily, as matter of law, show the death to be so caused as to exempt insurer from liability by the terms of the proviso.   (p. 557).

(5)   Whether the death of the insured, though by the intentional act of the beneficiary, should be deemed accidental, within the meaning of the insurance contract, is to be tested from the standpoint of insured, not from that of the slayer.   It is not determined by the fact that the latter acted in justifiable self defense, from the circumstances as they appeared to her.   If the insured did not have ground to anticipate death at her hands as a result.

of his threatened violence to her, which does not necessarily appear from the agreed facts, his death was, from his standpoint, an accidental one, and would not prevent the beneficiary from recovery on the contract of insurance. Mr. Justice MADDEN dissents.   (pp. 558, 559).

Error to the Court of Civil Appeals for the First District, in an appeal from Anderson County.

Mrs. Glayds Hutcherson, for herself and as guardian for her two minor children, Sibyl and Mabel, sued the Sovereign Camp, Woodmen of the World, on a benefit certificate issued to her late husband Willie J. Hutcherson.   Judgment was for defendant and plaintiff appealed.   The judgment was affirmed by the Court of Civil Appeals (241 S. W., 516) and appellant obtained writ of error.

The judges of the Supreme Court having certified their disqualification to sit in this cause, Mr. G. C. Clegg was appointed and qualified as Chief Justice, and Mr. J. W. Madden and Mr. George S. King as Associate Justices, and the cause was heard and disposed of by the Special Supreme Court so constituted.

*Seagler & Pickett,* for plaintiff in error.

Where a member of a fraternal beneficiary society dies while in good standing, the beneficiary named in the benefit certificate is prima facie entitled to recover on said certificate, and the burden of proof is on the Order to establish a legal defense in order to defeat the right of recovery.

It is contrary to the general policy of our laws to forfeit insurance contracts in favor of the Insurer, except in cases where the facts come clearly within the forfeiture provision of the policy, and if the designated beneficiary in a fraternal benefit certificate cannot take the insurance money because of some impediment, the same should be treated as if there was a failure of the designated beneficiary, and the next of kin should receive the insurance money.   Grand Lodge v. Mackey, 104 S. W., 907; Harris v. Harris, 97 S. W., 504; Ruling Case Law, Vol. 14, par. 409.

If the designated beneficiary in an insurance policy cannot for any reason receive the benefits provided for in the certificate, the same should not be forfeited to the Insurer, but should be treated as a part of the estate of the deceased and pass under the laws of descent and distribution.   Murchison v. Murchison, 203 S. W., 423; Ruling Case Law, Vol. 14, par. 409.

In a suit on a fraternal benefit certificate, where the defendant defends the action on the grounds that the insured came to his death at the hands of the beneficiary not by accident, and the evidence shows that at the time the insured came to his death, it did not reasonably appear to the deceased that death would be his probable portion as a result of his conduct at the time and place, and that

he had no reasonable grounds to anticipate that he would be killed under such circumstances, it is error for the court to find as a fact that the insured did not meet his death by accident.   Bryant v. Continental Casualty Co., 107 Texas, 582; Georgia Casualty Co. v. Shaw, 197 S. W., 316; Lovelace v. Travelers' Protective Assn., 28 S. W., 877; Union Cas. & Surety Co, v. Harroll, 40 S. W., 1080.

Where one party makes an assault or attempted assault upon another, as a result of which he is shot and killed, such killing, is in law an accident if under the circumstances surrounding the killing it did not reasonably appear to the deceased that death would be his probable portion as a result of making such assault, and he had no reasonable grounds to anticipate that he would be killed when he approached his antagonist in a threatening manner.   Same authorities.

Where a fraternal beneficiary association provides in its benefit certificate and in its constitution and by-laws that said certificate shall be void if the insured should die by the hands of the beneficiary, such provision is -intended by the Order as an adoption of the principle of public policy that no beneficiary shall recover money upon an insurance policy where the beneficiary feloniously takes the life of the insured, and does not embrace or include cases where the beneficiary takes the life of the insured in self-defense or under circumstances showing the killing not to be felonious.   Same authorities.

*Campbell, Greenwood & Barton,* for defendant in error.

It is an indisputable proposition that the benefit certificate and the by-laws with the amended constitution, constitute the contract of insurance between appellant and appellee in this case.   Modern Woodmen of America v. Lynch, 141 S. W. 1055; The Knights and Ladies of Honor v. Payne, 101 Texas, 449.

Under the law the same rule does not apply where the death is caused by accidental means as applied to accident insurance, and death as caused by "accident" as applied to life insurance, and where insured is intentionally shot by the beneficiary, no court could hold the shooting was an "accident."   Greer v. Supreme Tribe of Ben Hur, 190 S. W., 72; Northwestern Mut. Life Ins. Co. v. Hazelett, 105 Ind., 212, 55 Am. Rep., 192, 4 N. E., 582; Grand Circle Women of Woodcraft v. Rausch, 24 Colo. App., 304, 134 Pac., 141; Markland v. Modern Woodmen of America, 210 S. W., 921.

Where a man is engaged in a quarrel with his wife for several hours, it being renewed at different times, and the wife, intentionally, designedly, and deliberately places herself within reach of a deadly weapon, and the husband approaches her in anger, cursing and swearing, with an axe in his hand, and his conduct produces upon the mind of his wife a reasonable expectation or fear of death; the husband, under those circumstances, was bound to have known that

death would be his portion if his wife had anything on earth with
which to resist his assault when he arrived within striking distance,
and a killing by the wife under such circumstances, by the strongest
stretch of imagination, could not be an accident in law. Taliaferro.
v. Travelers' Prot. Assn. of Am., 80 Fed., 368; Fidelity & Cas. Co.
of N. Y., v. Stacey's Extr., 143 Fed., 273; Joyce on Ins., p. 208;
Feder v. Traveling Men's Assn., 43 L. R. A., 693, 70 Am. St., 212;
American Accident Co. v. Reigart, 21 L. R. A., 651, 42 Am. St., 374;
Railway Mail Assn. v. Moseley, 211 Fed., 10.

Where there is no provision in the beneficiary certificate to the
effect that if the insured should die by the hands of the beneficiary,
in that event the policy should revert to the heirs of the deceased
(insured), or become a part of the estate of the deceased, such a
clause or contract cannot be and will not be written into the benefit
certificate by the courts of the country, and, more especially is this
true where there is no statute imposing such liability at the time of
the execution of the contract or death of the insured.

MR. JUSTICE KING delivered the opinion of the court.

Plaintiff in error, so far as is material to here state, in view of the
conclusions reached, sought by this action to recover as the beneficiary
designated in a benefit certificate, issued and delivered by Defendant
in Error, insuring the life of her husband. From an adverse judg-
ment in the District Court she prosecuted an appeal to the Court of
Civil Appeals for the First Supreme Judicial District, where the
judgment of the lower Court was affirmed.

The "certificate" sued upon partakes of the nature of an ordinary
life contract, and constituted an obligation on the part of the insurer
to pay her the money therein stipulated upon the death of the as-
sured at a time when all assessments had been paid and while, un-
der the by-laws, constitution and certificate, which were made a
part of the contract, the insured was in good standing.

Among the provisions and conditions specified in the contract
thus formed, of which there were many, but one is considered material.
It provides:

"If the member holding this certificate should die by the hands of
the beneficiary, or beneficiaries, named herein, except by accident
* * * * * this certificate shall be null and void and of no force and
effect, and all moneys which shall have been paid, and all rights and
benefits which shall have accrued on account of the certificate shall
be absolutely forfeited, without notice or service."

Under this provision of the contract, Defendant in Error, by pro-
per pleadings then and now seeks to defeat a recovery.

It appearing that the insured did die by the hands of the bene-
ficiary, we are called upon to determine whether or not, in the cir-

cumstances of the killing of the insured by the beneficiary, as agreed upon, the trial Court and the Court of Civil Appeals have correctly determined that the circumstances of the killing were such as to bring the same within the exception defended upon, or was not an accident.

The beneficiary was not an active party in the making of the contract. She had no vested interest therein, her rights in the contract were purely beneficial and was entirely contingent on the contract being in force at the time of the death of the insured, without his having changed the beneficiary. The Court of Civil Appeals therefore correctly determined that the issue as to whether the killing was, or not, an accident, must be determined from the standpoint of the assured. An event resulting in death may be objectively accidental, though the event causing such accident may subjectively arise and result intentionally on the part of the person responsible for the subjective cause. Biddle on Insurance, Chapter 10, Volume 2, Page 78. Fidelity & Casualty Company v. Johnson, 72 Miss., 333, 30 L. R. A., 208; American Accident Company v. Carson, 99 Ky., 441, 34 L. R. A., 301, 59 Am. St., 473; Accident Insurance Company v. Bennett, 90 Tenn., 256; Richards v. Traveler's Insurance Company, 89 Calif., 170, 23 Am. St., 455; Supreme Council Order of Chosen Friends v. Garrigus, 104 Ind., 133; 54 Am. Rep., 298; Robinson v. United States Mutual Ac. Assn., 68 Federal, 825; Lovelace v. Traveler's Protective Association, 126 Mo., 104, 28 S. W., 877, 30 L. R. A., 209; Phelan v. Traveler's Ins. Co., 38 Mo. App., 640; Gresham v. Equitable Accident Ins. Co., 87 Ga., 497, 13 L. R. A., 838, 27 Am. St., 263.

The case was tried upon an agreed stipulation of facts, signed by the respective parties, and afterwards approved by the Trial Court as being the facts so agreed upon and upon which the case was tried. Article 1949 of the Revised Statutes provides for the trying of causes upon agreed statement of fact. When a case is so tried, the agreed statement is to be considered in the light of well defined legal limitations, and in the nature of a special verdict, it admits there is no dispute as to the facts, and constitutes a request by each of the litigants for a judgment, which each contends arises as a matter of law from the agreed facts.

The Courts are without power, in the absence of a provision in the agreed statement providing otherwise, to draw any inference, or find any facts, not embraced in the agreement, unless, as a matter of law, such other inferences are necessarily compelled; and the judgment of the Court must only declare the law which necessarily arises from the facts agreed upon. Article 1949 R. S.; 38 Cyc., Page 1934; Texas & Mexican Railway Company v. Scott, 129 S. W., 1170; Ozark Plateau Land Company v. Hays, 105 Mo., 143, 16 S. W., 957.

As a general rule, conclusions of fact by the Trial Court have no office in the trial of a case upon an agreed statement of facts.

Two other principles of law, properly understood and applied render much aid in correctly concluding what judgment, as a matter of law, under the facts agreed upon, and to be hereafter analyzed, necessarily arises. The one, whether the beneficiary, or the insurer, carried the burden of proof; the other, whether, if the insurer had the burden, it can recover, unless the facts agreed upon by it compelled, as a matter of law, a judgment in its favor.

While the first question is not altogether free from difficulty, we have concluded that the great weight of authority places the burden of establishing the exception defended upon on the insurer. The identical question, so far as we have been able to find, has never been decided by the Supreme Court of this State in a suit upon an ordinary life policy, or certificate, carrying such exception. It is to be observed that the exception defended upon is not embraced in, and does not form a part of, the provision obligating the insurer to pay in the event of death, while the insured was in good standing, but is inserted in a different place in the certificate as a proviso against liability in the event the assured died by the hands of the beneficiary, except by accident. The exception "Except by Accident" appears in, and is a part of, the general exception in the certificate relieving the insurer from liability in the event of death at the hands of the beneficiary. The whole exception, and each part thereof, must be considered together in determining what excuses the liability of the insurer, and when so considered the provision "Except by Accident" constitutes within the general exception itself a limitation upon such general exception, and therefore, the general clause, considered in its entirety, is but a limited or conditional exception against liability and, therefore, falls within the general rule which places the burden upon the insurer to establish an exception against liability, where such liability "prima facie" appears, and compels a judgment in favor of the beneficiary unless removed by the facts.

The question, as it arises in this case, is clearly distinguishable from the holding in Traveler's Insurance Company v. Harris, (Com. of App.), 212 S. W., 933. That was a suit upon an accident policy, and before the insured could recover he had to establish the accidental event insured against, while here the beneficiary's case is made when it is shown that the insured had died while in good standing, with all assessments paid, if no other facts appeared. It was not incumbent upon her to show how he came to his death, and the only way the insurer could escape liability when it was established that the insured had died while in good standing, with all assessments paid, was to establish by evidence not only that he had died by the hands of the beneficiary, but that he had so died under such circumstances as did not constitute an accident. Grand Fraternity v. Melton, 102 Texas, 401; Home Benefit Association v.

Sargent, 142 U. S., 691, 35 L. Ed., 1161; McClure v. Great Western Accident Association, 141 Iowa, 350, 118 N. W., 271.

In Grand Fraternity v. Melton, supra, there was involved the exception in the insurance certificate rendering it void in case of self destruction by insured while "Sane or Insane," and there Mr. Justice Brown held:

"When the plaintiff proved that J. H. Melton had died, she established a 'prima facie' right to recover. The burden was upon the Fraternity to prove that Melton shot himself and that he did it intentionally."

So, in this case, the burden was upon the insurer to establish, not only that the insured died by the hands of the beneficiary, but that he died at her hands under such circumstances as not to constitute an accident.

This brings us to the consideration of what the parties had in mind by the expression "Except by Accident," as used in the clause on which the defense rests. There occurs no expression of limitation to the term "Except by Accident," in the clause under consideration. Accident as here used will therefore be considered according to the general acceptation and use of the term. When so considered, it means the happening of an event not to be expected or anticipated in the light of common experiences and of the existing circumstances. When used in an insurance contract it means the happening of an event, unexpectedly taking place, and not according to the usual course of things, or not as expected. The happening of an unusual event, if caused through human agency, occurring without intention on the part of the person affected by such event. Corpus Juris, Vol. 1, Pages 425-426; Bryant v. Continental Casualty Company, 107 Texas, 582, 182 S. W., 673.

Now, applying the rule by which we must be governed in considering an agreed statement, and keeping in mind that the burden of proof is upon the insurer to establish that the killing occurred under circumstances not constituting an accident, as that term is used in the excepting clause of its contract, and as well the meaning of the term "accident" when employed in its general sense, and its customary use, we come now to consider the agreed statement as made by the parties upon which the case was tried and is now properly before us, for the purpose of determining whether the insurer in this case, by its agreement, has discharged the burden imposed upon it in establishing facts from which it must follow, as a matter of law, that it was entitled to a judgment; for if the facts as agreed upon do not necessarily, as a matter of law, compel a judgment in its favor, the beneficiary, who under the agreed statement has made a prima facie case, must recover. 38 Cyc. 1934; Boston v. Brooks, 187 Mass., 286, 73 N. E., 206; Ozark Plateau Land Co. v. Hays, 105 Mo., 103, 16 S. W., 957.

. To establish that the killing, though by the beneficiary, was not an accident, it must show that the assured made·an assault upon the beneficiary, or that his conduct toward the beneficiary at the time he was killed, coupled with his conduct just prior to such time, was such that he must have known, or at least must have anticipated that by his conduct toward the beneficiary she would in all probability kill, him. Lovelace v. Traveler's Protective Assn., 126 Mo., 104, 28 S. W., 877; Union Casualty & Surety Company v. Harroll, 98 Tenn., 581, 40 S. W., 1080.

The agreed statement establishes that the benefit certificate sued upon had been properly issued and delivered; that all assessments had been paid, and the assured was in good standing when he died. It further establishes that he died by the hands of the beneficiary; that the beneficiary killed the assured, believing that he intended to make an attack upon her, which, viewed from her standpoint, caused her to have a reasonable expectation or fear of death or serious bodily injuries. It establishes that the two had had a family quarrel in the morning, and another just before noon, but it does not appear that either was at all serious or threatening, and we are not permitted to infer that they were. It shows that at the time of the fatal shot, the insured had approached the house, his own home, and that he was angry and swearing, but it does not show that he was swearing at the beneficiary. It shows that he had an axe in his hands, holding the handle of the same near the blade of the axe, but it does not show that at any time he made any character of demonstration, or threat, to do the beneficiary violence with the axe; that, under the circumstances, the beneficiary, invoking, according to the agreed facts, the rule of appearances of danger, as viewed from her standpoint, shot and killed assured with a pistol; but it does not show, and we may not infer, that the insured knew that she had a pistol or was armed at all. This constitutes all of the material facts embodied in the agreement.

The fact that the agreement shows that the beneficiary acted in self defense, upon appearance of danger, as viewed from her standpoint, does not at all establish that deceased intended to assault or do her harm, for she may have so believed, and yet his intentions and purposes may have been perfectly innocent. Had the beneficiary been upon trial for an unlawful killing, it would have been incumbent upon the trial court to have instructed the jury, if, as viewed from her standpoint, she reasonably believed that it was the purpose of deceased to attack her, she would have been justified as in self defense, and this though deceased's acts and purposes toward her may have been innocent, and though in fact there was no real danger. The fact that it is agreed she so believed from her standpoint does not establish, when viewing the transaction from his

standpoint, as we must here do, that he so intended, or anticipated, that she would so believe. The agreement, therefore, that she so acted does not establish, nor does it raise a presumption that the insured intended by his conduct to alarm her to the extent that she would kill him, or to cause him to anticipate that she would probably kill him. The killing of the husband by the wife is not the usual and expected thing to happen simply because there has been a family quarrel, or because the one happens to be angry and swearing. It is going quite too far to say that a husband, in his own home, because there has been a family quarrel, and because he is angry and swearing, and because he is holding an axe in his hand by his side, must expect or anticipate that his wife would likely slay him.

The agreed statement establishing a prima facie case in favor of the plaintiff in error, as the beneficiary in the certificate, and failing, as we believe, to establish, as a matter of law, that the judgment arising from such facts must necessarily have been for the defendant in error, it follows that the judgment of the Court of Civil Appeals, and of the District Court, must be reversed, and judgment here rendered in favor of plaintiff in error, Mrs. Gladys Hutcherson, for the sum of Fifteen Hundred ($1500.00) Dollars, together with interest thereon at the legal rate from the date of judgment of District Court, and for all costs which have been incurred because of this litigation, and it is accordingly so ordered.

*Reversed and rendered for plaintiff in error.*

Mr. Justice MADDEN delivered the following dissenting opinion.

I regret that I cannot concur in the opinion of the majority of my brethren rendered in this case. I agree with them in the holding that a prima facie case was made out by the plaintiffs in error and that the burden of proof upon the issue of "accident" or no accident is upon the defendant in error, the latter being defensive matter. I also agree that this court is bound by the agreed statement of facts, and that we cannot deviate therefrom as to the evidence to be considered. But I cannot concur in the conclusion that the insured was killed by the beneficiary by "accident." And feeling impelled to this course, and the case being one of first impression in this State, so far as I have been able to find, it probably devolves upon me to state my reasons for non-concurrence at some length so as to make my position as clear as I can.

The case is not without its difficulties. In fact, I have found myself at times very much in doubt about a correct solution of it, even after as thorough an investigation of the authorities accessible to me as I had been able to make. I have carefully and studiously

read and considered the briefs of counsel for both parties more than once, and this court cannot but feel deeply grateful to them for the information and research contained in them, each side maintaining their position with consummate ability. The value of this information and its absolute necessity are very forcibly shown in the case of Grand Lodge v. Lawson, 203 S. W., 394, wherein Judge Jenkins, who rendered the opinion, said:—"Neither of the parties hereto has cited any authority in reference to this feature of this case; and in our limited time for research we have not been able to find any." This case is the only one I have been able to find anywhere that is exactly like the case at bar in the recitals and terms of the contract on the question of "accident." The language there used is precisely the same as that in the instant case, while the facts as to the killing were very different. The court holding that there was no accident, and the "feature" to which Judge Jenkins referred was that which related to a killing by the beneficiary "by accident." I am citing this opinion only to show how utterly devoid of precedent we are as a guide to a correct decision in the instant case, and it only shows that all this special court can do is to just "hew out" such a decision as is most compatible with the rules of construction of contracts and most in harmony with what may seem to be the right and justice of the case.

Having said this much by way of "introduction," so to speak, I come now to the points of divergence between the majority of this court and myself, and this divergence seems to arise upon a construction of the following clause in the insurance contract, in the light of the agreed statement of facts, viz:—"If the member holding this certificate should die *by the hands* of the beneficiary or beneficiaries named herein, *except by accident,* this certificate shall be *null and void* and of no force and effect, and all moneys which shall have been paid and all rights and benefits which shall have accrued on account of the certificate shall be *absolutely* forfeited, without notice or service."

Without burdening this opinion by copying the agreed statement of facts on this feature of the case, suffice it to say that the agreement shows that the insured was killed by his wife, the beneficiary, after repeated quarrels, both very angry, under circumstances which justified the wife to resort to the law of self-defense in her own protection, and kill the insured, which she did by shooting him with a pistol which she had concealed under the pillow of her bed, he, at the time of the shooting, advancing upon or towards her, cursing and swearing, and with an ax in his hand, holding it next to the blade. The pertinent portions of this agreed statement are more fully set out in the opinion rendered by Judge Graves in the Galveston Court of Civil Appeals, 241 S. W., 516, which are here referred to for a more extended statement of the same.

No jury was had in the trial court and the trial judge held that the killing was done by the wife "acting in her own necessary self-defense, and not by accident," thereby rendering "the certificate null and void and of no effect, and the plaintiffs are not entitled to recover." If I correctly interpret the decision of the appellate court above referred to, that court held that the question of "accident" should be determined from the "standpoint of the husband" and not that of the wife, the trial court not indicating from whose standpoint the issue of "accident" should be considered, although I gather from his conclusions of fact and of law that it should be determined from the standpoint of the wife. In fact, Judge Graves does not seem to have attached very much importance to the question of "accident," but, in effect, held that the insured had "breached" his contract by placing himself in such position as to make it necessary for his wife to kill him in her own self-defense, and therefore, "the obligation never matured, and he left nothing to raise any issues on between the association and his beneficiaries." And again he says:—"Under the conclusion indicated, no question of forfeiture arises, but merely one of enforcement of a contract as made by the parties to it."

My brethren of the majority are in harmony with the Court of Civil Appeals in holding that the issue as to whether the killing was or was not by accident must be determined "from the standpoint of the assured," but they reach different conclusions, the majority basing their view upon the statement that this conclusion is correct because the wife, the beneficiary, was not "an active" party in the making of the contract, and therefore the question of "accident" cannot be considered "from her standpoint," while the Court of Civil Appeals holds that the plaintiffs should not recover, though it be considered, as do the majority, "from the standpoint" of the husband. In other words, though reasoning from the same "angle," as to the issue of "accident," they reach different results.

With all due respect to the majority and the Court of Civil Appeals, and knowing their learning and ability, I must say that I do not agree with them as to the "angle" from which to consider the question of "accident" in this case, and I say it with full knowledge of my own imperfections. I believe that, no matter under what circumstances the killing occurred, the issue of "accident" must be determined from the standpoint of the wife, and from her standpoint alone. Under the terms of the contract, she, and she only, could commit the "accident," if any, by which the killing should take place. The accident, if committed at all, must be committed "by the hands" of the wife, the beneficiary. This is the express requirement of the contract as to the "killing," and no one denies that she did the killing, and no one denies that if we determine the

question of "accident" from the standpoint of the wife there was no accident. An accident committed by any one else would not have affected the validity of the contract. In the very nature of things it could not do so. The "accident," if any, must flow from some act or conduct of the "beneficiary," and in this case the wife was the beneficiary and she did the "killing." She killed the insured deliberately and intentionally, bringing the pistol out from its "hiding place," and purposely fired the fatal shot that ended the life of her husband. There was no "accident" *at her hands,* and she should not be allowed to take advantage of her own deliberate act and recover on the policy. Had she and her husband been in a good humor and she had been merely "toying" with the pistol, and it was unintentionally fired, or if she had inadvertently dropped the pistol from her hands and it so struck something as to make it shoot, then, in either case, the shooting would have been by "accident." Or if she had killed him in any other accidental manner and not by deliberation and on purpose, the policy would not have been "forfeited," nor would it have been if some one else had killed her husband without her knowledge or consent or collusion, whether by accident or not. The admitted fact that she killed the insured "in self-defense," shows that it was not done "by accident." The contract did not say that if she should kill the insured "except by accident or in self-defense" it would be forfeited, but declared that if she should kill him in any way except by accident the contract would be rendered "null and void." True, the doctrine of "self-defense" is far-reaching and is inviolable, and it looks hard that she must lose her contract because she had to kill her husband, as she thought and as the agreed statement specifically declares, *in self-defense.* As was so forcibly expressed by one of the "pioneer" judges of Texas, Associate Justice Royall T. Wheeler of the Supreme Court, in the case of Lander v. State, 12 Texas, 476:—"The right of self-defense rests upon the law of necessity; is the natural and inalienable right of every human being and does not depend upon any law of society, but is derived from a *higher* source; and may be rightfully exercised anywhere and at all times, w hether beneath a despot's rule or on Freedom's soil, or whether he exists in a heathen land or breathes beneath a Christian sun." But contracts must be construed according to the terms in which they are expressed, and in keeping with the usual, natural and logical significance of the language used in them, and neither sentiment nor sympathy can be permitted to alter them, no matter how much we would sometimes like to have it otherwise. So it is in the instant case, though the beneficiary killed the insured "in self-defense," she should not be permitted to excuse her own purposely committed act by invoking even this sacred and inalienable right, or by reason of the fact that it is

mutually agreed that the right did exist. True, she was not an "active party" to the contract, but she was the "beneficiary," by whose conduct, and that of no one else, according to the contract, the latter was to remain in force or become "null and void," and by whose conduct alone the issue of "accident" or no accident was to be determined. As I see it, the question of "accident or no accident" was "limited and restricted" to her acts if we will give to the language of the contract its ordinary, reasonable and logical interpretation. The "killing" was to be done "by the hands" of the "beneficiary," and so must the "accident," if any, be "by the hands" of the beneficiary, when we read the connection in which the language of the contract is used.

However, and in order to make my position better understood on the question of "accident" and the "standpoint" from which it is to be viewed, I will state that I could not construe the killing to have been done "by accident" even if it is considered "from the standpoint of the insured." The killing came about by his own conduct, that is, it was evidently provoked by him, and to say that he had no reason to "anticipate" that it might lead to his death, is going further into his "mental processes" at that time than I can afford to go, with all the surrounding circumstances confronting me and with the plain language of the contract before me. As I have stated, to undertake to consider the issue of accident "from the standpoint of the insured" would be doing violence to the clear and plain terms in which the contract is expressed, but if that is done, still I can not concur in the contention that the "beneficiary" killed the insured "by accident." In all fairness and justice to my brethren of the majority it is perhaps due them that I should say that there is a line of authorities which seem to authorize the opinion they have rendered; but I maintain that these authorities are based on cases very different from the one at bar, and are founded upon contracts not at all similar to the one we are seeking to interpret. For the most part they rest upon contracts made in purely "accident insurance" cases, and because of the special and peculiar verbiage of such contracts. Counsel for plaintiff in error very ably present their views upon some of those cases, and I have read and re-read them with much interest and concern. And if it were not for having to extend this opinion beyond a proper and necessary length, I would be glad to review some of them and endeavor to show their dissimilarity to the one we are trying to decide. The instant case is not one of "accident insurance" at all. Certainly, it does raise the issue of "accident," pure and simple, but it is one upon which the line of authorities I have referred to throw very little valuable light, as I now see them, and are clearly distinguishable from the instant case. For quite a while I was very favorably

impressed with those authorities and was disposed to view them as the majority have done, but further, and, I trust, better examination and investigation have led me to believe my first impression was erroneous. Having no precedent by which to be guided, and with nothing but analogous decisions to aid us, the case at bar is in a group· "all to itself," so to speak, and must be reasoned out principally upon its own terms of expression, and this I have sought to do, after giving to it the best thought of which I am capable.

What I have said leads naturally to the conclusion that I must dissent, though regretfully, as I have stated, from the majority opinion, and hold that all the assignments of error should be overruled and the judgment of the trial court and that of the Court of Civil Appeals affirmed.