**GREAT AMERICAN RESERVE INSUR-ANCE COMPANY, Appellant,**

**v.**

**Tina Elizabeth SUMNER, Appellee.**

**No. 526.**

Court of Civil Appeals of Texas, Tyler.

Feb. 11, 1971.

Rehearing Denied March 11, 1971.

Lawrence & Lawrence, Wm. D. Lawrence, Jr., Tyler, for appellant.

Ramey, Brelsford, Flock, Devereux & Hutchins, Mike A. Hatchell, Jack W. Flock, Tyler, for appellee.

MOORE, Justice.

This is a suit for the recovery of proceeds of an insurance policy insuring against accidental death. The policy was issued by appellant Great American Reserve Insurance Company upon the life of Hoyt V. Sumner, deceased. His wife, Tina Elizabeth Sumner, appellee, was named as beneficiary. The policy was in the principal sum of $5,000.00 and provided such sum would be paid to the beneficiary if "(1) loss or disability resulting solely, directly and independently of all other causes from accidental bodily injury sustained during the term of this policy * *." Section VI of the policy provided: "If such injury shall independently of all other causes and within ninety (90) days from date of accident solely result in any one of the following specific losses, the Company will pay in lieu of any other indemnity payable under this policy: * * * Life—The Principal Sum."

The insurance company pleaded that the insured died as the result of a gun shot wound to the head when he was confronted by his assailant, David Smith, while the insured was allegedly engaged in an act of sexual intercourse with the assailant's wife. The company denied appellee's claim under the policy on the ground that the deceased should have anticipated death by reason of his adulterous act and did not die as the result of accidental bodily injuries. After a trial before the court sitting without a jury, the trial court entered judgment in favor of the beneficiary-appellee, from which the insurance company perfected this appeal.

The policy in question does not contain any provision which would limit or destroy the insurer's liability for death or injury to

the insured as a result of an intentional act of another, nor is there any provision in the policy excluding liability where death or injury results to insured while engaged in the violation of law.

The parties are in basic agreement that the sole question presented by the case in the trial court was whether or not the insured died as a result of an accident. They both further agree that the prevailing law was correctly stated in the case of Releford v. Reserve Life Insurance Company, 154 Tex. 228, 276 S.W.2d 517, at page 518 (1955), wherein the rule is stated:

"* * * As stated in the Hutcherson case, the test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured. If from his viewpoint his conduct was such that he should have anticipated that in all reasonable probability his wife would kill him, his death was not accidental; if from his viewpoint his conduct was not such as to cause him reasonably to believe that she would probably kill him, then his death was accidental. * * *"

It seems to be the well settled law in this state that death by gun shot, or by any form of homicide, at the hands of a third person is deemed to be an "accident", even though death was intended by the person doing the shooting. This rule, however, is not without exception. If the deceased, prior to death, engaged in some conduct toward his assailant from which he did know, or should have known, the assailant would kill him by violent means, then the death is deemed not to be an "accident". Hutcherson v. Sovereign Camp, W.O.W., 112 Tex. 551, 251 S.W. 491 (1923); Releford v. Reserve Life Insurance Company, supra; American Nat. Ins. Co. v. Garrison, 97 S.W.2d 534 (Tex.Civ.App., Eastland, 1936, writ dism.); American Nat. Ins. Co. v. Hammond, 91 S.W.2d 432 (Tex.Civ.App., Waco, 1936, writ dism.); and others.

By its first point as we understand it appellant challenges the legal sufficiency of the evidence to support findings of fact numbers 6 through 8 made by the trial court, whereby the court found that the death was a result of an accident as viewed from the standpoint of the deceased/insured that the deceased/insured had not entered into an affray with his assailant immediately prior to the shooting, and that from the information available to him, the deceased/insured could not reasonably foresee that he would be killed by his assailant. By his third point, appellant says that the deceased, by reason of his adulterous conduct, should have anticipated death and therefore his death did not constitute an accident. Both points will be discussed together.

Under the first point of error it becomes our duty to examine the record and determine whether or not there is any evidence of probative force to support the fact findings of the trial court. No rule is better settled than the one to the effect that if there is any evidence of probative force to sustain the findings of the trier of the fact, the appellate court is bound by such findings. Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194. In determining this question we must view the evidence in a light most favorable to the appellee, rejecting all evidence favorable to the appellant. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. The findings challenged by appellant as being without support in the evidence are as follows:

"(6) Viewed from the standpoint of the deceased, it was not reasonably foreseeable to the deceased that by reason of his illicit meeting in a secluded place with assailant's wife that he, the deceased, would encounter the armed assailant, DA-

VID SMITH, at the place and upon the occasion in question.

"(7) After being surprised and confronted by the armed assailant, the deceased did not enter into an affray with the assailant nor engage in any further conduct calculated to invite or provoke the shot which killed him.

"(8) Viewed from the deceased's standpoint, with the information available to him at each step of the transaction, it was not reasonably foreseeable to the deceased that any act of the deceased would bring about a fatal gun shot wound."

The only testimony as to what actually occurred at the time and place of the killing was given by the assailant, David Smith; his wife, Birdie Smith, having died prior to trial, there were no other witnesses to the incident. When viewed in a light most favorable to the findings, the evidence shows that the deceased had been acquainted with Smith and his wife, Birdie, for approximately one year prior to his death. During this time he testified that all of his dealings with the deceased had been friendly. On the occasion in question, Smith testified that he became suspicious of his wife when he saw his granddaughter driving his wife's automobile. He testified that immediately thereafter he drove down the Bellview Road, stopped his automobile, took out his 12-gauge shotgun, and walked across the pasture about 300 feet where he discovered his wife and the deceased engaged in sexual intercourse. His purpose, he testified, in taking the gun was to kill his wife. He testified that upon discovering her, he told her "Birdie, haven't I told you I was going to walk up on you." At this point Birdie got up and came toward him attempting to talk to him and he told her not to come any closer. As she continued to approach him, he testified he cocked his gun and threw it on her. At this point the deceased said "Don't shoot her." To which he replied, "I'm not talking to you. I'm talking to my wife."

Commencing at this point his testimony appears to be in conflict. On one occasion he testified that the deceased was walking toward him while he had his gun pointed toward his wife and that he shot the deceased. On another occasion he testified that he could not remember just what happened. He also testified that he could not deny the fact that while he was holding the gun on his wife Birdie, it went off and struck the deceased in the head while he was standing some 25 to 30 feet away. He further testified that the deceased was only partially clothed at the time and admitted that he could see that he was not armed with any type of weapon.

■ The test of whether death is accidental, within the terms of the policy supplement, is a fact question to be determined by the trier of the fact and is to be determined from the viewpoint of the insured and not from the viewpoint of the one that does the killing. Releford v. Reserve Life Insurance Co., supra; Hutcherson v. Sovereign Camp, W.O.W., supra; Life & Casualty Insurance Company of Tennessee v. Martinez, 299 S.W.2d 181 (Tex.Civ.App., San Antonio, 1957, n. w. h.); Spencer v. Southland Life Insurance Company, 340 S.W.2d 335 (Tex.Civ.App., Fort Worth, 1960, err. ref.); National Life and Accident Insurance Company v. Knapp, 430 S.W.2d 84, 87 (Tex.Civ.App., Houston, 1968).

In Hanna v. Rio Grande Nat. Life Ins. Co., 181 S.W.2d 908 (Tex.Civ.App., Dallas, 1944, err. ref.), the court states: " 'Where the effect is not the natural and probable consequence of the means which produce it —an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means.' "

Even though we recognize that the act of adultery is morally reprehensible, yet we do not believe death is the usual or expect-

ed result of it. In other words, participation in an adulterous affair does not naturally lead to a violent and fatal ending. To hold to the contrary would be to say that the killing of an adulterer, in the absence of any other aggravating circumstances, follows his offense in the ordinary cause of events. Such a holding would appear to be contrary to the relatively few reported cases on the subject. See Supreme Lodge Knights of Pythias v. Crenshaw, 129 Ga. 195, 58 S.E. 628 (1907); Life & Casualty Insurance Company v. Lingerfelt, 100 Ga.App. 477, 111 S.E.2d 724 (1959); Accident Ins. Co. of North America v. Bennett, 90 Tenn. 256, 16 S.W. 723 (1891). Other than the act of adultery, the deceased did nothing, except taking a few steps toward his assailant, to provoke the deadly assault. He made no threats or threatening gesture and his assailant admitted he could see that he was unarmed. Thus when the evidence is viewed in a light most favorable to the finding, the killing of deceased cannot be said to be the natural and probable consequence of the means which produced it. There is nothing in the crime of adultery, although a violation of the law of the land and a great moral wrong, which in its essence is calculated to produce the death of the adulterer. Under some circumstances it may be the occasion of the death of the adulterer, but his death is not the natural and legitimate consequence of the adultery itself. Supreme Lodge Knights of Pythias v. Crenshaw, supra. The mere fact that Article 1220, Vernon's Annotated Penal Code provides that homicide is justifiable when committed by the husband upon one taken in the act of adultery with the wife does not necessarily mean that every adulterer is bound to anticipate death as the inevitable result of his act. Ordinarily most husbands do not undertake to vindicate such wrongs by homicide but rather lay their problem in the lap of the divorce courts. Therefore we do not believe it can be said that the deceased should have reasonably anticipated such violent consequence by reason of his conduct. As we

view the record there is at least some evidence of probative force in support of the trial court's finding that the deceased met death solely as a result of an accident. Appellant's first point is overruled.

■ By the second and final point appellant complains of the refusal of the trial court to make certain additional requested findings of facts. In our opinion, the requested additional findings were covered by the original findings filed by the trial court, and were directly contrary to those findings. Therefore the trial court was not required to make the findings requested, nor could it commit error by refusing to make them. Wentz v. Hancock, 236 S. W.2d 175 (Tex.Civ.App., Austin, 1951, writ ref.); Wade v. Taylor, 228 S.W.2d 922 (Tex.Civ.App., Amarillo, 1949, n. w. h.). Appellant's second point is overruled.

The judgment of the trial court is affirmed.