**Vivadean P. WALLACE, Plaintiff-Appellee,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant-Appellant.**

No. 72-2025.

United States Court of Appeals, Fifth Circuit.

April 30, 1973.

James W. Gewin, Birmingham, Ala., for defendant-appellant.

William L. Irons, Birmingham, Ala., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and MOORE * and RONEY, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff, Vivadean P. Wallace, is the widow of her husband, Billy Gene Wallace (Wallace). She is the undisputed beneficiary of a $50,000 accidental death insurance policy issued to her husband when he was for a brief period of time an employee of the Gulf Oil Corporation (Gulf). A certificate evidencing this insurance had been issued to Wallace under a "Voluntary Group Accident Policy" under which the Connecticut General Life Insurance Company (Connecticut General), the defendant-appellant, insured employees of Gulf.

This action was commenced in the United States District Court for the Northern District of Alabama to recover the proceeds of the policy. Jurisdiction was grounded upon diversity of citizenship of the parties. The case was tried before the Court without a jury. Judgment was entered for the plaintiff. Connecticut General, the insurer, appeals.

A brief resume of the facts suffices to frame the issues raised on this appeal.

Plaintiff and her husband had lived together in Alabama for approximately eight years, during which time he had held various jobs. They had six children. In October, 1969, Wallace, leaving his wife and children in Alabama, went to Texas where he rented an apartment and lived with a Joyce Wallace (not his wife). Although Wallace returned to

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

Alabama on three brief occasions prior to June, 1970, his employment was in Texas, first with Gulf, then Foley's, and again with Gulf, an employment which lasted from January to May, 1970. During this time Wallace became insured under the Gulf group policy, which was paid up through June 30, 1970. Plaintiff was the named beneficiary under the policy which covered death from an "accidental bodily injury". Wallace continued to live with Joyce near Tuscaloosa, Alabama, until his death on June 26, 1970.

Wallace's occupation upon his return to Alabama, from which he derived some income, seems to have involved the unlawful cutting, removal, and sale of copper telephone wire from telephone poles in the Tuscaloosa area. Unfortunately, while engaged in this enterprise, wire, which Wallace had in his possession, must have come into contact with high tension (44,000 volts) power wires. Wallace's body, badly burned, was found near the base of a telephone pole. There was burned wire in contact with the body. The facts more than justify the trial court's conclusion that Wallace died "as a result of electrocution" and that "beyond any reasonable doubt * * * the insured [Wallace] was engaged in an illegal act * * *."[1]

The trial court addressed itself to the two main issues: (1) Was this an accidental death? and (2) Did the fact that Wallace was engaged in an illegal act constitute a defense under the policy?

Were there a substantial difference in the applicable law of Alabama and Texas to the facts here presented, a dissertation on conflict of laws might be required, but such is not the case.

The trial court's conclusion that "the act of cutting the wire does not have such inherent hazards in and of itself" as to make serious injury or death a "natural and probable consequence" is clearly supported by the facts.[2]

Connecticut General argues that, where a person voluntarily engages in an act, the natural and probable consequences of which may be injury or death, death or injury therefrom is not an accident. The types of cases cited from Alabama and Texas deal with radically different situations. Thus, if an insured knowingly places himself in a position where injury or death is likely to result, injury or death is not accidental. Examples: injury caused by being shot while committing a crime;[3] altercation and assault upon a man known to be armed, resulting in insured's death;[4] resisting arrest, insured killed by the officer in self-defense.[5] The element of reasonable foreseeability of injury or death is stressed in the applicable decisions as a prerequisite to denial of recovery.[6] Where injury or death is not a reasonable probability, recovery is allowed.[7]

Accidental death has been defined as the happening of "something unforeseen, unexpected, and unusual."[8] Conversely, if death or injury was not a reasonably foreseeable consequence of the insured's acts, death might well be, dependent upon the facts, accidental. Here, upon the facts, the trial court found that death was not "foreseeable and that the act

1. Opinion read into trial record at close of trial. Appendix 314, 315.

2. Opinion, App. 316, 317.

3. Wright v. Western & Southern Life Ins. Co., 443 S.W.2d 790 (Tex.Civ.App. 1969).

4. Texas Prudential Ins. Co. v. Turner, 127 S.W.2d 563 (Tex.Civ.App.1939).

5. Massachusetts Bonding & Ins. Co. v. Richardson, 27 S.W.2d 921 (Tex.Civ. App.1930).

6. Texas Prudential Ins. Co. v. Turner, *supra*, 127 S.W.2d at 565; Hutcherson v. Sovereign Camp, W. O. W., 112 Tex. 551, 556, 251 S.W. 491, 493 (Tex.Civ. App.1923); American Nat'l Ins. Co. v. Garrison, 97 S.W.2d 534, 536 (Tex.Civ. App.1936); Perry v. Aetna Life Ins. Co. of Conn., 380 S.W.2d 868, 877 (Tex.Civ. App.1964).

7. See cases cited in note 6, *supra*.

8. O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 461, 168 So. 580, 582 (1936).

of cutting the wire does not have such inherent hazards in and of itself as to make him [Wallace] or make one there engaged in that act a voluntary participant in the unexpected contact with some other wire which produce[d] his [Wallace's] death." [9]

Even though the proof be convincing that Wallace's death was accidental, Connecticut General argues that the public policy of Alabama bars a recovery to an insured whose death occurred while he was committing a felony. It is true that the trial court in its opinion in dealing with what constituted accidental death noted a difference between Texas and Alabama law and said that under Alabama law "as a matter of public policy coverage may be denied or at least recovery may be denied as a matter of public policy, if the insured met his death while engaged in an unlawful act." [10] However, the court came to the conclusion that "the public policy in Alabama which is against the proceeds of the insurance policy being paid to some beneficiary of someone engaged in an illegal act is not so strong a public policy as to require its enforcement by a court of this forum, * * *." [11]

Although the court suggested that an "appellate question" might be presented, it concluded that under the law of Alabama the policy "should be treated as a Texas contract and interpreted under the laws of the State of Texas" [12] and that under Texas law the beneficiary was entitled to recover. Thus, the court

—despite its finding that "were the state laws of the State of Alabama to be applied to this, that the beneficiary would not be entitled to recover" [13]—did not actually have to base its decision on this hypothetical assumption as to Alabama law. Accordingly, we AFFIRM the decision of the district court.

9. Opinion, App. 317. In Great Am. Reserve Ins. Co. v. Sumner, 464 S.W.2d 212 (Tex.Civ.App.1971), Sumner was killed when caught in the act of adultery with the assailant's wife. Texas had apparently decided to relieve the courts of this type of homicide by setting up certain standards by providing (Texas Penal Code, Vernon's Ann.P.C. Article 1220) that:

Homicide is justifiable when committed by the husband upon one taken in the act of adultery with the wife, provided the killing take place before the parties to the act have separated * * *.

Despite this provision of the law, the Civil Court of Appeals of Texas held that a man killed by an enraged husband under circumstances clearly within the purview of Article 1220 died "accidentally" for the purposes of an accidental death insurance policy. In so concluding the court said:

There is nothing in the crime of adultery * * * calculated to produce the death of the adulterer.
464 S.W.2d at 216

If death from wife stealing is accidental, a fortiori, so should be death from wire stealing.

10. Opinion, App. 315–16.

11. Id. at 318.

12. Id. at 312.

13. Id. at 318.