**Wanda HASTINGS, Appellee,**

v.

**BOSTON MUTUAL LIFE INSURANCE COMPANY, Appellant.**

No. 91–3304.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1992.

Decided Sept. 15, 1992.

---

Philip Hicky, Forrest City, Ark., argued (Wallace E. Maloney and Dan K. Horn, Dallas, Tex., on the brief), for appellant.

B. Michael Easley, Forrest City, Ark., argued, for appellant.

Before JOHN R. GIBSON, Circuit Judge, PECK,* Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Defendant–Appellant Boston Mutual Life Insurance Company (Boston Mutual) appeals from the judgment of the United States District Court for the Eastern District of Arkansas. At the conclusion of evidence presented before a jury, Boston Mutual moved for a directed verdict; the district court denied the motion. The jury found for Plaintiff–Appellee Wanda Hastings. The district court denied Boston Mutual's motion for judgment notwithstanding the verdict, or in the alternative, motion for a new trial. For the reasons that follow, we affirm.

## I. FACTS

On the morning of September 5, 1989 Gary Hastings beat his wife, Melody Hastings, with his fists and a coat hanger, leaving multiple lacerations on her head, arms, shoulders and back. On the same morning in the bedroom of their home in the Drew Mobile Home Park in West Monroe, Louisiana, Gary Hastings pointed a loaded .22 caliber rifle at Melody's head and threatened to kill her.

Shortly before noon on that day, Melody and Gary Hastings stopped fighting. Melody Hastings left the couple's mobile home to pick up her daughter at day care. She returned with her child within twenty to twenty-five minutes. After their return, the Hastings ate lunch together; they did not fight during lunch.

At about 2:00 PM Gary Hastings received a telephone call from a creditor. He became angry and the Hastings resumed their argument. Gary threw a coat hanger

at the microwave; the glass door shattered. Gary Hastings pushed his wife into the bedroom; he locked the front door of the mobile home and proceeded down the hall into their bedroom.

Inside the bedroom Melody Hastings grabbed the .22 caliber rifle. Gary Hastings entered the bedroom and saw his wife with the gun. "Are you going to shoot me?" he said. "Go ahead and shoot me. Shoot me." Melody Hastings shot her husband. Gary Hastings died as a result of the bullet wound. A Louisiana grand jury returned no true bill against Melody Hastings. The district attorney declined prosecution.

Plaintiff–Appellee Wanda Hastings, Gary's mother, brought this civil suit to recover proceeds as the beneficiary of an accidental death insurance policy on the life of her son issued by Defendant–Appellant Boston Mutual. The policy, executed in Texas, contained an exclusion for death occurring during the insured's commission of, or attempt to commit, a felony. Boston Mutual declined to pay the policy proceeds on the grounds that Gary Hastings's death was not an accident and that his death occurred during his commission of, or attempt to commit, a felony.

A jury trial was held in the United States District Court for the Eastern District of Arkansas on May 21, 1991. After the jury heard the evidence, Boston Mutual moved for a directed verdict on the ground that the evidence was so one-sided that reasonable jurors could not differ as to the outcome, and on the ground that Gary Hastings's felonious conduct in connection with the shooting precluded Wanda Hastings's recovery under the insurance policy as a matter of law. The district court determined that the questions of whether Gary Hastings's conduct was felonious, and whether his conduct should have caused him to expect to be killed were questions for the jury. The jury returned a verdict for Wanda Hastings. The court entered

---

* The HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit

Court of Appeals, sitting by designation.

judgment in her favor; Boston Mutual perfected this appeal.

## II. ANALYSIS

### A. Denial of Boston Mutual's Motions

■ The standard of review for denial of motions for directed verdict and for judgment notwithstanding the verdict is the same.[1] *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1248 (8th Cir.1987). In its review of the trial court's denial of these motions, this Court must: (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) affirm the denial of the motions if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn. Accordingly, a trial court has not erred if there is substantial evidence—more than a mere scintilla—to support a verdict in favor of the party opposing the motions. *City Nat. Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1312 (8th Cir.1991).

■ In addition, this Court has held that the authority to grant or deny a new trial is a matter within the district court's discretion. This Court may not reverse the trial court's decision to deny a new trial unless the appellant demonstrates a clear abuse of that discretion. *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1221 (8th Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

Keeping in mind these standards of review, we conclude that the district court did not err in denying Boston Mutual's motions for directed verdict and for judgment notwithstanding the verdict. Furthermore, we find that the district court did not abuse its discretion in denying Boston Mutual's motion for a new trial; we do not find that the jury verdict was contrary to the clear weight of the evidence.

■ In this diversity case the parties do not dispute that since the insurance policy at issue was executed in Texas, Texas law governs construction of the policy's terms. As early as 1923 in *Hutcherson v. Sovereign Camp W.O.W.*, 112 Tex. 551, 251 S.W. 491 (Tex.1923), the Texas Supreme Court established the test for determining whether intentional killings of an insured should be considered "accidents" according to the terms of life insurance policies. In *Releford v. Reserve Life Ins. Co.*, 154 Tex. 228, 276 S.W.2d 517 (Tex.1955), citing *Hutcherson*, the Texas Supreme Court stated:

> (T)he test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured. If from his viewpoint his conduct was such that he should have anticipated that in all reasonable probability his wife would kill him, his death was not accidental; if from his viewpoint his conduct was not such as to cause him reasonably to believe that she would probably kill him, then his death was accidental. This was the jury question under the facts of this case.

*Releford*, 276 S.W.2d at 518.

■ In *Hutcherson* the Texas Supreme Court opined that a wife's killing of a husband is not the usual and expected thing to happen when there has been a family quarrel. The Court stated:

> It is going quite too far to say that a husband, in his own home, because there has been a family quarrel, and because he is angry and swearing, and because he is holding an ax in his hand by his side, must expect or anticipate that his wife would likely slay him.

*Hutcherson*, 251 S.W. at 494. Thus the court refused to establish that under these circumstances the husband's death was not an accident as a matter of law. *Id.* Likewise, other Texas Supreme Court decisions indicate that the question of whether the insured's conduct was such as to cause the insured reasonably to believe that an indi-

---

1. According to Fed.R.Civ.P. 50 as amended effective December 1, 1991, these motions are currently entitled "motions for judgment as a matter of law."

vidual would kill him was a jury question. *See Republic Nat. Life Ins. Co., v. Heyward*, 536 S.W.2d 549, 553 (Tex.1976). Wanda Hastings's counsel argued to the jury that the words Gary Hastings spoke to his wife did not indicate that he believed his actions would probably result in his death. The jury found for Wanda Hastings. We decline to overrule the jury's finding.

### B. Jury Instructions

A district court has broad discretion in instructing the jury. In conducting our review this Court reverses a judgment only if we find that, when viewed in their entirety, the jury instructions contained an error or errors that affected the substantial rights of the parties. *United States E.P.A. v. City of Green Forest, Arkansas*, 921 F.2d 1394, 1406 (8th Cir.1990), *cert. denied sub nom., Work v. Tyson Foods, Inc.*, — U.S. ——, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991). Accordingly, we will not find error in instructions simply because they are technically imperfect or are not a model of clarity. *See Federal Enterprises, Inc. v. Greyhound Leasing & Fin. Corp.*, 849 F.2d 1059, 1061 (8th Cir.1988).

Boston Mutual contends the instructions given to the jury failed to set forth adequately the Texas law of accidental death in relation to an accidental death insurance policy. We disagree. The trial court's instruction number seven reads as follows:

> Death is produced by, or is a result of accidental means when it is not the natural and probable consequence of the means which produced it. In other words, when death does not ordinarily follow, and therefore cannot be reasonably anticipated, as a result of the use of such means.

Boston Mutual argues that this instruction is deficient because the instruction does not inform the jury that accidental death is to be determined from the perspective of a reasonable person in the position of the insured and not from the perspective of the person who took the insured's life.

The trial court determined that instruction number seven was a fair interpretation of the governing law. Moreover, the judge determined that Boston Mutual's proffered jury instructions were argumentative and too fact specific. During the trial, the judge admonished the jury stating that the members were to consider evidence concerning accidental death from the viewpoint of the insured. Both parties made reference to this fact in their closing arguments. Under the circumstances of this case, we conclude that any perceived deficiency in the trial court's jury instructions does not constitute reversible error.

### C. Exclusion of Evidence of Prior Violence

A trial judge has wide latitude in ruling on the admissibility of evidence; a judge's decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion. *Maddox v. Patterson*, 905 F.2d 1178, 1179 (8th Cir.1990). Boston Mutual sought to introduce evidence of prior violent episodes between Melody and Gary Hastings. The trial court determined that the probative value of the evidence was outweighed by the danger of unfair prejudice. In the case *sub judice* we do not find that the trial court's exclusion of this evidence rises to the level of a clear and prejudicial abuse of discretion.

### D. Exclusion of Coverage for Commission of a Felony

The insurance policy contained a clause excluding coverage for any claim arising out of bodily injury caused by or contributed to by the insured's commission of, or attempt to commit, a felony. The parties do not dispute that according to *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), whether Gary Hastings committed a felony which caused or contributed to his death in Louisiana is to be determined by Louisiana law. The Louisiana Code defines a "felony" as "any crime for which an offender may be sentenced to death or imprisonment at hard labor." La.Rev.Stat.Ann. § 14:2(4) (West 1992). According to this definition in the Louisiana Code, simple battery, aggra-

vated assault, and simple assault are not felonies. *See* La.Rev.Stat.Ann. §§ 14:35, 14:37, 14:38.

■ For the exclusion to apply, Boston Mutual must be able to demonstrate that Gary Hastings's death was caused by or contributed to by his commission of a felony as defined by the Louisiana Code. Boston Mutual contends that Gary Hastings engaged in aggravated battery and second degree battery against Melody Hastings that caused or contributed to his death.

The Code defines aggravated battery as "a battery committed with a dangerous weapon." La.Rev.Stat.Ann. § 14:34. The Code defines second degree battery as:

(A) battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury. For the purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

Whether Gary Hastings's commission or attempt to commit aggravated battery or second degree battery caused or contributed to his death was a question for the jury. The jury found in favor of Wanda Hastings. We find no reason for overturning the jury's finding.

III. CONCLUSION

For the reasons stated above, we conclude that the district court did not commit reversible error. Accordingly, we AFFIRM the district court's judgment in favor of Plaintiff–Appellee Wanda Hastings.

BEAM, Circuit Judge, concurring.

I concur with the court's opinion on every issue except the propriety of the contested jury instruction. I believe that instruction seven failed to properly set forth all of the elements required by Texas law. I agree, however, that under the circum-

stances of this case, "reversible" error did not occur.