Henratta Udora CARTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 40241.

Court of Criminal Appeals of Texas.

April 5, 1967.

Rehearing Denied May 24, 1967.

————◆————

Bill Cox, of Woodruff, Hill, Bader & Kendall, Dallas, for appellant.

Henry Wade, Dist. Atty., Joe Max Hendley, Joe Max Hendley, Jim Law and Kerry P. FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Shoplifting; the punishment assessed by the jury is ninety (90) days in jail and a fine of $500.00. The trial commenced on February 10, 1966.

In her first ground of error, appellant challenges the sufficiency of the evidence to sustain her conviction.

Verdine Shelby, a saleslady at Levine's, testified while working at above named Dallas County Department Store on November 12, 1965, she waited upon appellant who asked to see a pair of pants, size 16. She related appellant selected from one of the racks a $5.99 pair of blue Capri stretch pants, size 16, and the only one of its kind in stock, and immediately inquired if there were any better pants available. She revealed that when she returned with a second pair of pants, appellant had retired to a completely enclosed dressing room with only one entrance where she observed that the appellant had removed the black pants she had worn into the store and was "putting on the blue pair of stretch pants". Thereafter, Mrs. Shelby related she remained just outside of the curtained entrance of the dressing room. Five to seven minutes later, the appellant emerged from the dressing room, handed the second and better pants to Mrs. Shelby, saying, "They didn't fit.", and started leaving the store with her male companion, in a hurry. Immediately checking the dressing room, Mrs. Shelby found only "the tag that said $5.99 and size 16". She quickly alerted the store's security officer, Robert Counts. Officer Counts observed the appellant leaving the store with a large purse, but was unable to stop her. He related he hollered and tried to attract her attention and while she looked at him, she drove off in a 1960 Ford automobile. He secured the license number of appellant's car and was able to secure her home address through her motor vehicle registration. Approximately thirty (30) minutes after her departure from the store, appellant was arrested at her home and returned to the store. Appellant's niece admitted the officers to appellant's home, but appellant's home and automobile were not searched. On that same day and subsequently at the trial, appellant was identified by Mrs. Shelby and Officer Counts as the woman they had seen at the store at the time in question.

Abe Goldberg, Manager of Levine's located on Second Avenue in the City of Dallas, testified that the merchandise involved was in his care, custody, and control on November 12, 1965; and that he did not give appellant his consent and permission to take the blue Capri stretch pants. He related that these pants had never been recovered.

Testifying in her own behalf, appellant denied taking the blue stretch pants and stated she had not been in Levine's on the day in question, though she had that day parked her automobile in front of Levine's when she visited another department store

two (2) doors away. She related that she wore size 12 or 14 pants, depending upon how they were made.

The careful trial judge charged the jury on the law of circumstantial evidence, and the jury by their verdict rejected appellant's explanation of the transaction.

To support her contention that the evidence is insufficient to sustain the conviction, appellant cites Phea v. State, 150 Tex. Cr.R. 77, 199 S.W.2d 160; Jaso v. State, 144 Tex.Cr.R. 492, 164 S.W.2d 695; and Kahn v. State, 142 Tex.Cr.R. 307, 152 S.W. 2d 761. In none of these cases were the appellants ever shown to have had possession of the missing items. Further, in Kahn v. State, supra, unlike the case at bar, there was a lapse of an hour before it was discovered that the mink coat had been taken. The record here reveals that it was not a busy day at Levine's whereas in Kahn, supra, there were a number of other persons in the fur salon at the time of the theft.

■ Appellant was the last person seen in possession of the pants, and her actions as described by Mrs. Shelby and Officer Counts, and her flight from the scene were amply sufficient to warrant a finding by the jury that appellant removed the pants from the store with the intent to deprive the owner of the value of the same and appropriate it to her own use and benefit. See Woods v. State, Tex.Cr.App., 394 S.W. 2d 513.

In view of the foregoing, we find no merit in appellant's second ground of error that the trial court erred in overruling her motion for instructed verdict based upon the lack of sufficient evidence.

In her third ground of error, appellant contends that the trial court erred in allowing her to be interrogated about statements made under arrest.

On cross examination, the Assistant District Attorney inquired whether appellant hadn't told the police officers at her home, when she started to talk to them, that she had never even been on Second Avenue that day. Appellant's counsel objected on the ground that the answer would constitute a statement made while under arrest. Upon the objection, being overruled, appellant's counsel asked to perfect his Bill of Exception, action upon which the court deferred until later. Thereafter, in the presence of the jury, the following questions were asked by the prosecutor and answered by the appellant:

"Q (By Mr. Law) All right, now let me re-ask that question, Miss Carter. Didn't you in fact tell the police officers that you had not been on Second Avenue at all that day?

A I didn't tell them I hadn't been on Second. When they asked me, I'd say yes. They asked me where I was, and I told them I was at the Morris Department Store. He asked me where I parked, I told him in front of Levine's Store.

Q And you didn't tell them that you had not been on Second Avenue?

A No sir, I did not say I hadn't been on Second Avenue.

Q And then after you admitted to the police that you had parked in front of Levine's and had then been to another store around there some place, didn't you after that say that you had been in Levine's?

A No sir, I didn't.

Q So now is it your testimony that you had not been in Levine's at all that day?

A I had not been in there since the 9th, on Tuesday.

Q So you just parked in front of Levine's and that's all?

A I parked in front of the store and that's all.

Q And you were doing your shopping at some other store, but you just happened to park in front of Levine's?

A That's right."

666

Appellant's answers were consistent with her testimony on direct examination.

Immediately thereafter, the court retired the jury and permitted the appellant to perfect her Bill of Exception.

Testimony given prior to appellant's objection was to the effect appellant's conversation with the officers as to her whereabouts earlier that day occurred at the very beginning of their visit; that subsequently she left her house to check her automobile license plates and had returned; that she had not been arrested until some time after the officers had arrived at her home and only when she became belligerent and created a disturbance.

At no time did appellant testify as to her impression as to just when she was placed under arrest. However, in view of Officer Counts' rather inconsistent testimony on the Bill of Exception as to the exact time of the arrest, the cautious trial judge sustained the objection, and at the request of the appellant instructed the jury to disregard any statements made by the appellant to officers at her home. The motion for mistrial was overruled.

Thereafter, no further evidence was offered as to any conversation between appellant and the officers at her home.

At the time of the first objection and before proceeding further, the appellant should have been permitted to establish, if she could, that appellant was under arrest at the time of the statements inquired about.

 A confession or statement of facts amounting thereto, made by an accused, while in custody or confinement, which would not be admissible as original evidence could not be used for impeachment. Freeman v. State, 172 Tex.Cr.R. 144, 354 S.W.2d 141. See Article 38.22, Vernon's Ann. C.C.P.

Nevertheless, in the case at bar, the appellant denied making such statements. Such statements, even if made, were not in and of themselves incriminating or in the nature of a confession, the jury was instructed to disregard any testimony as to such statements, and the State made no further attempt to impeach the appellant. No proof that appellant had denied her presence on Second Avenue to the officers was ever offered before the jury. See Mason v. State, 74 Tex.Cr.R. 256, 168 S.W. 115.

There is no evidence here to indicate that the prosecution deliberately attempted to produce before the jury evidence known to be inadmissible hoping that the State would be relieved of liability in the matter by having the Court instruct the jury to disregard the testimony. See Stafford v. State, 125 Tex.Cr.R. 174, 67 S.W.2d 285.

We cannot say that the asking of questions under the circumstances here presented was so obviously prejudicial that the instruction of the Court could not cure the error.

The judgment is affirmed.