**Georgia Mae LEWIS, a Widow, et al.,
Plaintiffs-Appellees,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.**

No. 27727

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

Oct. 1, 1969.

1078

Elton Gilliland, Shafer, Gilliland, Davis, Bunton & McCollum, Odessa, Tex., for defendant-appellant.

John J. Watts, Odessa, Tex., V. F. Knickerbocker, Midland, Tex., for plaintiffs-appellees.

Before THORNBERRY, MORGAN and CARSWELL, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a Texas diversity action to recover benefits on an accidental death insurance policy.[1] The main question in the case is whether the death of the deceased, which was caused by gunshot wounds inflicted by a woman whom he was assaulting, was "accidental" within the meaning of the policy. The trial court directed a verdict on this issue in favor of the decedent's widow, appellee here, thereby holding the death accidental as a matter of law. Since we have concluded that under Texas law the case raised questions for the jury, we reverse and remand for a new trial.

Two issues are presented for our decision. One concerns the appropriateness of the directed verdict under the standards set by Boeing Co. v. Shipman, 5th Cir. 1969, 411 F.2d 365. The other concerns the exclusion by the trial court of certain impeachment evidence offered by the insurance company. We take up the issues in this order.

## I. THE DIRECTED VERDICT ISSUE

Early one Sunday morning, after a late-night party, Annie May Wallace tragically shot and killed Oscar Lewis. She and the deceased had lived together.

The deceased had returned home early, Annie May coming about two hours later. Upon her arrival, the deceased ordered her to get her clothes and get out, striking her hard three times. While she was leaving, Annie May told the decedent not to hit her any more; but he pursued her out into the yard, knocked her down, and began beating her. It was in this posture that the deceased was killed by a shot from a pistol he had given his companion earlier in the evening.

A jury could reasonably have found from the evidence that the shot came accidentally or that the decedent could not have anticipated that he would be shot. On the other hand, there is also ample evidence from which a jury could have found that the deceased knew he might be shot. He knew that his companion had the pistol because he had given it to her earlier in the evening. She warned him to stop beating her. The evidence does not show conclusively when or where she took the gun out, but it conceivably may have been before the deceased began beating her. There was testimony from which a jury could have found that the deceased continued to beat Annie May after she had begun firing at him. Above all, a jury might have found that a heavy, strong man vigorously assaulting a woman should expect that she might defend herself by whatever means were available.

Consequently, a directed verdict for appellee was improper here. While there are circumstances in which death from gunshot wounds received in the course of an assault may be considered accidental, Texas law is clear to the effect that a person who should reasonably have foreseen that his conduct might provoke the use of deadly force against him cannot be said to have encountered accidental death. In Stevenson v. Reliable Life Ins. Co., Tex.Civ.

---

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5th Cir. 1969, 409 F.2d 804, Part I.

App.1968, no writ hist., 427 S.W.2d 945, for example, a man who advanced at his wife in a threatening manner while she held a pistol was held not to have died accidentally when she shot him. *See also* Seaboard Ins. Co. v. Murphy, Tex.Com. App.1939, *opinion adopted,* 134 Tex. 165, 132 S.W.2d 393; Perry v. Aetna Life Ins. Co., Tex.Civ.App.1964, writ ref'd n. r. e., 380 S.W.2d 868; Spencer v. Southland Life Ins. Co., Tex.Civ.App. 1960, writ ref'd, 340 S.W.2d 335. The test is to be applied from the viewpoint of the insured; that is, with reference to the facts and inferences available to him. The beneficiary, however, had the burden of pleading and proving coverage under the policy. Reserve Life Ins. Co. v. Crager, Tex.Civ.App.1967, no writ hist., 421 S.W.2d 697; Bethea v. Nat'l Cas. Co., Tex.Civ.App.1957, writ ref'd, 307 S.W.2d 323. Comparing facts and law, we find that under Boeing Co. v. Shipman, supra, there is sufficient evidence to go to the jury here.

## II. THE IMPEACHMENT EVIDENCE ISSUE

One of the items of evidence that the insurance company sought to introduce at the trial was a statement made by Annie May Wallace to a police officer after the incident. This statement, which contradicted the declarant's direct testimony in some material respects, was offered for impeachment purposes as a prior inconsistent statement. The trial court, however, excluded the statement because it had not been preceded by the warnings of rights required for admission of confessions in criminal cases by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.[2] The declarant was a possible defendant to a criminal prosecution, and solicitude for her rights was unquestionably appropriate, but we hold that the exclusion of this statement offered for im-

peachment purposes in a civil case was error.

■ We begin with the proposition that the statement offered, since it was a prior inconsistent statement, would ordinarily be admissible for impeachment purposes solely on that ground, absent any basis for its exclusion. Contrary to appellee's apparent argument, it does not have to fall into any exception to the hearsay rule, such as res gestae, in order to be admissible. The hearsay rule applies to statements offered to prove the truth of the matter asserted. An inconsistent statement, on the other hand, is admitted to demonstrate falsity. It is important evidence going to the credibility of a witness' testimony, and the policy for admitting it is readily apparent. *See* C. McCormick, Evidence §§ 33–34, 225 (1954). It remains to inquire whether there is reason to exclude the statement at issue here.

■ The issue, though simple, has a number of confusing ramifications which we must eliminate from consideration. First, we recognize that the declarant's statement would be inadmissible, in whatever form it was offered, as direct evidence against the declarant in a criminal prosecution if it occurred under custodial interrogation and was not preceded by warnings. This is the undisputable teaching of *Miranda.* Secondly, we do not face and do not decide the question whether this statement, or any part of it, would be admissible for impeachment purposes in a criminal prosecution. This is a complicated question which *Miranda* has influenced but did not directly decide. *See* Note, The Collateral Use Doctrine: From Walder to Miranda, 62 Nw.U.L.Rev. 912, 931–32 (1968). Thirdly, we do not here face a situation in which the statement is offered as direct evidence in a civil suit. If it were, we would be faced with the question whether it was admissible as

2. We understand the trial judge's ruling to have been based solely upon the absence of warnings. If there were reason to suspect that the statement was other-

wise defective, *e. g.,* that it was involuntary, the case would present a different question than that with which we are faced here.

a declaration against penal interest, since it was not spontaneous, or part of the res gestae, or an admission of a party. Having eliminated all these questions, we are left with the precise issue in this case: Whether the omission of *Miranda* warnings makes this statement inadmissible for impeachment purposes in a civil suit.

 We find no basis for excluding the statement under Texas law. The decisions of this Court and of the Texas courts indicate that evidence which would be inadmissible in a criminal case or as direct evidence in a civil case can nonetheless be admissible for impeachment purposes if it will not prejudice the rights of a criminal defendant. Thus in Johnson v. Empire Machinery Co., 5th Cir. 1958, 256 F.2d 479, this Court held that under Texas law a driver's guilty plea in a collateral criminal action, although inadmissible as direct evidence, was admissible to impeach the driver's testimony in a negligence action against the driver's employer. Although we have found no civil authorities on the precise question in Texas, we note that the Court of Criminal Appeals has held that impeachment by a defendant's prior inconsistent statements is permissible, provided that the rights of the accused under *Miranda* and the Texas confessions statute are not actually prejudiced, even if the formal requisites of the confessions statute are not complied with. Terry v. State, Tex.Crim.App.1967, 420 S.W.2d 945; Carter v. State, Tex.Crim. App.1967, 414 S.W.2d 663. These cases would seem to make such evidence admissible *a fortiori* in civil actions.

Besides being consistent with Texas law, the admission of this statement into evidence raises no *Miranda* issue. Appellee simply lacks standing to object on this ground, since *Miranda* is founded on the fifth and sixth amendment rights of accused persons. Its exclusionary rule does not assume any inherent defectiveness of confessions as evidence. See Johnson v. New Jersey, 384 U.S. 719, 731, 86 S.Ct. 1722, 1780,

16 L.Ed.2d 882. Its purposes are mainly (1) to preserve the dignity of the individual accused by preventing him from being unwittingly convicted out of his own mouth without advice of counsel and (2) to deter illegal police conduct in violation of these rights by removing any and all benefits that police could expect to derive from coerced confessions. Were there doubt about the inapplicability of these policies in this case, the importance of our following the *Miranda* decision would tip the balance against admitting the statement; but inasmuch as the statement is not here being used in any way that could possibly prejudice the declarant's fifth or sixth amendment rights or encourage police to coerce confessions, there was no basis for excluding it.

Reversed and remanded.