Shirley McGOWEN, Plaintiff-Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Defendant-Appellee.

No. 71–1074

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1971.

Rehearing Denied Nov. 3, 1971.

B. A. Britt, Jr., Harry B. Friedman, Harkness, Friedman & Kusin, Texarkana, Tex., for plaintiff-appellant.

* ■ Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, Tex., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

We are called upon here to determine whether under a Texas life policy the death of the assured was an "accident." The District Court directed a verdict against the beneficiary and in favor of the insurance company. We affirm.

The assured was John M. He and his wife Shirley, the beneficiary, had gone to a party hosted by Shirley's niece. There was no evidence that there was any ill feeling between Shirley and John until John became irate about the way Shirley was dancing. John insisted that he and Shirley go home at once.

Trying to comply, Shirley got in their car and backed it out. Seemingly unnerved by her husband, she hit the curb. John told her to get out of the car. John then got in, drove a short distance, stopped, and emerged with a knife and started moving toward his wife. Understandably frightened, Shirley turned and ran toward the niece's house. She yelled to her niece imploring her to have John's brother, Columbus, come to the rescue.

Columbus quickly arrived on the scene and tried to calm John down. John returned to the car but the fray was now just beginning. John again came from the car wielding his knife at Shirley and Columbus. Columbus pulled a gun and shot John in the stomach. In apparent pain John grabbed himself and pleaded with Shirley for help. This offer was refused, for John still was brandishing his knife. Then for the last time he went back to the car wherein he sat for a few minutes. Shortly, bloodied but unbowed, he again, knife in hand, moved toward Columbus and Shirley. This time Columbus shot to kill and succeeded all too well.

■ The insurance policy provided benefits for Shirley if John's death were an "accident." [1] Neither party raises a question as to the Texas construction of this familiar term of a life insurance policy. It was probably best stated in Releford v. Reserve Life Insurance Company, 1955, 154 Tex. 228, 230, 276 S.W. 2d 517, 518:

The "test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured. If from his viewpoint his conduct was such that he should have anticipated that in all reasonable probability [he would be killed], his death was not accidental; if from his viewpoint his conduct was not such as to cause him reasonably to believe that [he would be killed], then his death was accidental * * *." See also Hutcherson v. Sovereign Camp, W.O.W., 1923, 112 Tex. 551, 251 S.W. 491; Lewis v. Insurance Company of North America, 5 Cir., 1969, 416 F.2d 1077. In short the question is whether John could reasonably have anticipated that his death was imminent. If he could, then his death was no accident. [2]

---

1. Since in neither briefs nor record does the policy language appear, the parties presumably believe the specific wording is of no significance.

2. Recently Texas has had occasion to apply the definition to a factual situation with a new twist. See Great American Reserve Insurance Co. v. Sumner, Tex.Civ. App., 1971, 464 S.W.2d 212. Here the insured was engaged in sexual intercourse with a married woman. Her husband walked in and shot the paramour to death. The Court said that the trier of fact could find this death was accidental. It dismissed the beneficiary's argument which derived from Texas' written unwritten law (Vernon's Ann. Texas Penal Code Art. 1220) which states in relevant part: "Homicide is justifiable when committed by the husband upon one taken in the act of adultery with the wife, provided the killing take place before the parties to the act have separated." The Court

The standards to determine the appropriateness of a directed verdict or a judgment notwithstanding the verdict were exhaustively compiled and examined by this Court en banc in Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365. After doing so, we set the standard to follow in this Circuit.

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d at 374–375 (footnotes omitted).

▮ Under the *Boeing* guideline we conclude that all the evidence points one way—the death was not an accident. John was attacking with a knife. He should have expected that his victims would defend themselves. A bullet in the stomach was fair warning that the defense would be more than token. Besides all of this John knew that a head injury that Columbus had suffered made him fearful of falling and therefore more susceptible to defend himself with deadly force. Nonetheless John persisted in moving toward Shirley and Columbus with a knife. We believe that regardless of the angle from which the observer looks at the facts he would have to conclude that John could reasonably have anticipated that death would be the result of his actions.

Under *Boeing* there was nothing for the jury to decide and a directed verdict was therefore proper.

Affirmed.

RONEY, Circuit Judge (dissenting):

I respectfully dissent. The fact question for determination is whether, from the insured's viewpoint, it was an accident when he was killed by his brother. The principal witness was the brother, whose self-interest is obvious. The matter should have been left to the determination of a properly instructed jury rather than being ruled on by the court as a matter of law. Lewis v. Insurance Company of North America, 416 F.2d 1077 (5th Cir.1969); Releford v. Reserve Life Insurance Company, 154 Tex. 228, 276 S.W.2d 517 (1955).

---

said that although the homicide was justifiable, this did not imply that merely from engaging in this sort of conduct the interloper should have anticipated being killed.

Texas is alone among the states with this justifiable homicide law. The legislature has thus far resisted the importunings of those who say the law smacks of barbarity and denial of equality since in a society evermore conscious of Women's Liberation the law discriminates against women who under the statute are not given the right to kill the other woman engaged in like activities with the husband.