Vicki CRUMPTON, Plaintiff-Appellee,

v.

CONFEDERATION LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 81–1447
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 15, 1982.

Rehearing and Rehearing En Banc Denied May 20, 1982.

Locke, Purnell, Boren, Laney & Neely, Larry M. Lesh, Dallas, Tex., for defendant-appellant.

Wilson, Berry, Jorgenson & Fuqua, Dean Jorgenson, Dallas, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Vicki Crumpton, the beneficiary of an accidental death policy, sued Confederation Life Insurance Co. (Confederation) for the benefits under the policy. From a jury verdict and judgment in favor of the beneficiary, Confederation appeals. The asserted errors are twofold: (1) improper admission of prejudicial evidence of the character of the insured; and (2) incorrect denial of motions for j.n.o.v. or new trial since as a matter of law the death of the insured was not accidental. Finding no error by the District Court, we affirm.

### I. Facts

The facts in this suit on an insurance policy are unusual for that genre of cases. The insured, Titus Crumpton (Crumpton), was shot by Joanne Petton, a neighbor who lived just a little more than a block away. While Confederation's defense to the policy was that Crumpton's death was not accidental, the focus of the trial was on the alleged rape of Ms. Petton by the deceased insured. Thus we find it necessary briefly to summarize the circumstances claimed to have led to Crumpton's death.

On the afternoon of November 8, 1978, Ms. Petton, a housewife with three children, was allegedly raped and beaten in her home by Crumpton. The assailant apparently threatened to kill Petton's children if she informed the police or anyone about the rape. Ms. Petton did report the incident to the police five days later, on the morning of November 13, 1978, stating that the attack had occurred on the morning of November 8 and that she could not identify her assailant. Between the time of the alleged rape and her report to the police, Ms. Petton did inform her parents and her husband, but she never revealed to her husband that the assailant had made threats against her. On November 13, Ms. Petton was also examined by her physician who found multiple bruises on Petton's body "more consistent with a sex assault than just would be a general beating of some sort".

At approximately 9 p.m. on November 13, 1978, Ms. Petton asked her husband to pick up some medication at the drug store. After he left, Ms. Petton then delivered to her next door neighbor a sealed envelope containing a handwritten note stating "Mr. Crumpton attacked and raped me in afternoon not morning". Subsequently, Ms. Petton, with a pistol in her possession, went out to the garage at which time she observed Crumpton standing out on the street. Apparently, he proceeded toward her so she pulled out the gun and, without any verbal warning, shot Crumpton at close range.

### II. Suit on the Policy

Titus Crumpton was insured by Confederation as part of a group policy obtained by his employer to cover accidental death and dismemberment. The policy, in the amount of $150,000, designated Vicki Crumpton as the beneficiary. The policy provided benefits for accidental death, defined as "death resulting from ... accidental bodily injury visible on the surface of the body or disclosed by an autopsy."

Vicki Crumpton brought this suit seeking recovery of the proceeds of this policy, claiming that her father, Titus Crumpton, died of gunshot wounds inflicted by another person. Confederation, while admitting that Crumpton was insured under the poli-

cy, denied coverage, asserting that Crumpton's death did not result from an accidental bodily injury within the meaning of the policy. Specifically, Confederation, while not disputing the death, contended that Crumpton had raped his neighbor who fatally shot him in the belief that he had returned to inflict further harm on her or her children. For this reason, Confederation asserted that Crumpton should have anticipated that his actions would result in bodily injury, and thus his death was not accidental under the meaning of the policy.

The beneficiary denied that the rape occurred or alternatively asserted that Crumpton could not reasonably have anticipated his death five days after the rape. The case was tried to a jury to whom one special interrogatory was submitted: "Did plaintiff Vicki Crumpton prove by a preponderance of the evidence that the bodily injuries of T. B. Crumpton which resulted in his death were accidental?" The jury responded that "Plaintiff did prove." The District Court entered judgment awarding the beneficiary the benefits under the policy as well as statutory penalties and attorney's fees. Confederation's subsequent motion for j.n.o.v. or for new trial was denied. From this denial, Confederation appeals.

## III. Character Evidence

Confederation's primary assertion of error concerns the admission by the District Court of evidence regarding Crumpton's character. Prior to trial, Confederation by motion *in limine* sought an order prohibiting the admission into evidence of "any fact regarding or relating to T. B. Crumpton's character or reputation in the community." This motion was denied by the District Court judge who found that under the peculiar fact circumstances, Crumpton's character was at issue. Also, the District Court determined that the evidence would be admissible in a criminal case under F.R.Evid. 404(a), which rule, although appearing to apply only to criminal cases, should properly apply to the type of case at hand.[1]

At the trial Vicki Crumpton called as witnesses several persons who testified to Crumpton's "character". The witnesses included the pastor of a church, who testified that Crumpton did not have a violent temper, did not use profanity, and did not make passes at women; the church secretary who testified similarly; a "good friend" who testified that Crumpton did not use profanities or make obscene gestures or indecent proposals to women, was not violent, and did not drink; Crumpton's sister-in-law who testified similarly; and the beneficiary who

1. The following exchange occurred between the District Court judge and counsel for Confederation on the motion to prohibit character evidence.

THE COURT: ... [T]hat will be overruled and the basic reasons are that I think that in the peculiar fact circumstances of this case that Crumpton's character is in issue and character evidence would not be offered for collateral purposes and secondly, that I think under the circumstances, although the precise language of Rule 404(a) would appear to apply only to criminal cases, that the proper construction should be that it should apply to this type of case also. And that the evidence would certainly be admissible if we were trying a criminal case....

THE COURT: I want you to have a continuing objection to all of the evidence that comes in that does not pertain to the actual event so that you don't need to repeat that during trial. So, if you want to just state your objection right now for record purposes, I will overrule it, even though I will listen very carefully to it.

MR. LESH: Let me do that. We do want a continuing objection to all evidence pertaining to the character or reputation of Titus Crumpton on the ground that it is not relevant to the issue before the Court. It is expressly excluded by Rule 404. We would like that to be a continuing objection.

We would also make the statement that in view of the Court's ruling we will be compelled ourselves to put in evidence pertaining to the character of Mr. Crumpton and his conduct preceding the events in question which we would not have to do but for the Court's ruling. So, we do not want the introduction of that evidence to constitute a waiver of our objection to the admissibility of all of this evidence.

THE COURT: Okay. The objection is overruled for the reasons I outlined briefly which I will probably incorporate in an opinion, if necessary, after the case is over.

MR. LESH: Now, we do have—

THE COURT: As to the second point, your putting on evidence obviously does not waive your objection to character"

testified that her father was not violent and did not use threats.

Confederation contends that the admission of this testimony not only violated F.R. Evid. 404 but was also prejudicial, constituting "virtually the only direct evidence adduced to satisfy the Beneficiary's burden ...." The propriety of the admission of evidence of character depends in part on the purpose for which that evidence is offered. Generally this type of evidence is offered for one of two purposes: (1) when a person's possession of a particular character trait is an operative fact in determining the legal rights and liabilities of the party and thus is one of the ultimate issues in the case; or (2) to prove circumstantially that a person acted in conformity with his character on a particular occasion.[2]

■ The use of character evidence for the first purpose above is generally referred to as "character at issue". When used for such a purpose, it is not within the scope of F.R.Evid. 404 which applies instead to the second use, that of showing that the person acted in conformity with his character. *Reyes v. Missouri Pacific Railroad*, 589 F.2d 791, 793 n.4 (5th Cir. 1979). F.R.Evid. 404(a) governs the admission of character evidence when used for the circumstantial purpose and generally excludes such evidence unless within one of the three exceptions.[3] These exceptions are formulated in terms of whose character is being offered as evidence. They allow the admission of character evidence to prove action in conformity with character of the accused, of a victim in certain circumstances, and of a witness. With these exceptions, character evidence is generally excluded because it is viewed as having slight probative value and yet may be very prejudicial. *Reyes, supra,* at 793–94 n.6. Where character is part of the ultimate issue of a case, F.R.Evid. 404(a) is not relevant.[4]

■ The District Court, in denying the motion to exclude evidence of Crumpton's character, based the decision first on a finding that character was at issue. We agree with this conclusion. While the evidence of Crumpton's character might create an inference that he acted in accordance with that character on the night of the shooting, his character is also a fact upon which the liabilities of the parties turn. Crumpton's character was at issue given the defense raised by Confederation that Crumpton should have anticipated bodily injury because he committed a violent criminal act. Since his character was at issue and therefore not within Rule 404(a), the admission of the evidence was within the discretion of the trial court.[5] *Miller v. Universal City*

2. *McCormick on Evidence* §§ 186–188, at 442–45 (2d ed. 1972); 1 *Wigmore on Evidence* §§ 55–81 (3d ed. 1940).

3. Rule 404, Federal Rules of Evidence provides:
   (a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
   (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
   (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
   (3) Character of witness. Evidence of the character of a witness as provided in rules 607, 608 and 609.

   (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

4. Such evidence would still be subject to the general rule that evidence may be excluded when its probative value is outweighed by prejudice, confusion of the issues, or waste of time. F.R.Evid. 403.

5. The evidence is also clearly relevant within the meaning of F.R.Evid. 401. Confederation's challenge to the admission of the evidence focuses on F.R.Evid. 404(a) and does not specifically assert error under F.R.Evid. 401 or 403, both of which Rules allow broad discretion to the District Court.

*Studios, Inc.,* 650 F.2d 1365, 1374 (5th Cir. 1981); *Young v. Illinois Central Gulf Railroad Co.,* 618 F.2d 332, 337 (5th Cir. 1980). Given the unusual nature of this case, the decision whether to admit the evidence of character, although perhaps a close call, was reached after carefully weighing all factors. We thus find no abuse of discretion by the District Court in admitting such evidence.

■ Even if the evidentiary ruling were erroneous, reversal would not be necessary since the evidence of Crumpton's character was not prejudicial to the rights of Confederation. As discussed later in this opinion, there was sufficient evidence—aside from this testimony concerning Crumpton's character—from which the jury could find that Crumpton's death was accidental under the terms of the policy. Even if the jury believed Ms. Petton's claim that Crumpton had raped her previously, the jury did not necessarily have to find that Crumpton would reasonably anticipate Ms. Petton's delayed response. Absent a showing that substantial rights of the party were adversely affected, reversal for an erroneous ruling on evidence is not war-

ranted. F.R.Civ.P. 61; *Howard v. Gonzales,* 658 F.2d 352, 357 (5th Cir. 1981); *Dietz v. Consolidated Oil & Gas, Inc.,* 643 F.2d 1088, 1093 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 513, 70 L.Ed.2d 385 (1981); *Foster v. Ford Motor Co.,* 621 F.2d 715, 721 (5th Cir. 1980). The burden of demonstrating that such substantial rights were affected is on the party who asserts an error, here, Confederation.

■ The District Court also found that even if F.R.Evid. 404(a) were applicable, the evidence of character would be admissible under the exceptions. While Rule 404(a) generally applies to criminal cases, the unusual circumstances here place the case very close to one of a criminal nature.[6] The focus of the civil suit on the insurance policy was the issue of rape, and the resulting trial was in most respects similar to a criminal case for rape. Had there been a criminal case against Crumpton, evidence of his character that was pertinent would have been admissible. We do not view the notes of the Advisory Committee as contravening this interpretation.[7]

---

6. The application of Rule 404 within the context of a civil suit for injuries was not questioned in *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979). In that case, a football player sued for injuries received in a game and the District Court allowed evidence of prior acts of the plaintiff designed to show that the plaintiff was a "dirty player". The Tenth Circuit, after quoting F.R. Evid. 404, focused not on the Rule but on relevancy and whether the plaintiff's character was at issue. We interpret the Court's failure to discuss whether F.R.Evid. 404 is applicable to civil suits as impliedly approving its use, although not necessarily in the case at hand, to civil suits.

7. The Advisory Committee stated:

The argument is made that circumstantial use of character ought to be allowed in civil cases to the same extent as in criminal cases, i.e., evidence of good (nonprejudicial) character would be admissible in the first instance, subject to rebuttal by evidence of bad character.... Uniform Rule 47 goes further, in that it assumes that character evidence in general satisfies the conditions of relevancy, except as provided in Uniform Rule 48. The difficulty with expanding the use of character evidence in civil cases is set forth by the

California Law Revision Commission in its ultimate rejection of Uniform Rule 47 ...:

"Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened."

Much of the force of the position of those favoring greater use of character evidence in civil cases is dissipated by their support of Uniform Rule 48 which excludes the evidence in negligence cases, where it could be expected to achieve its maximum usefulness. Moreover, expanding concepts of 'character' which seem of necessity to extend into such areas as psychiatric evaluation and psychological testing, coupled with expanded admissibility, would open up such vistas of mental examinations as caused the court concern in *Schlagenhauf v. Holder* [379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152] .... It is believed that those espousing change have not met the burden of persuasion.

While the Committee's notes reject the expanded use of character evidence in civil cases,

*IV. J.N.O.V. or New Trial*

Confederation's second asserted error is that the District Court should have granted its motion for j.n.o.v. or for new trial. Confederation claims that the evidence established conclusively that Crumpton's death did not result from accidental bodily injury. To find such error, we would have to find that the evidence left no doubt that (1) Crumpton raped Ms. Petton and (2) rape and assault would likely lead to the death of the rapist.

■ Our standard of review on motions for j.n.o.v. is well-established in this Circuit. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). Viewing the evidence as a whole and in the light most favorable to the party opposing the motion, if reasonable men could not reach a contrary result, granting the motion is proper. *Central Progressive Bank v. Fireman's Fund Insurance Co.*, 658 F.2d 377, 380 (5th Cir. 1981); *Brown v. Arlen Management Corp.*, 663 F.2d 575, 580–81 (5th Cir. 1981).

■ In Texas, in insurance cases a presumption of accidental death from evidence of death by violent and external means has been recognized. *Republic National Life Insurance Co. v. Heyward*, 536 S.W.2d 549, 558 (Tex.1976).

> *[T]he test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured.*

*Heyward*, 536 S.W.2d at 552, quoting *Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 251 S.W. 491 (1923). If from the viewpoint of the insured his conduct was such that he should have anticipated that in all reasonable probability he would be killed, his death is not accidental. *McGowen v. Travelers Insurance Co.*, 448 F.2d 1315 (5th Cir. 1971). "Unless some

evidence to the contrary is produced, we think it is reasonable to presume that insured did not act in such a way that he should have reasonably known his actions would probably result in his death. The law assumes that one's natural instinct is to avoid injury and preserve his own life." *Heyward*, 536 S.W.2d at 559.

■ There was sufficient evidence under the *Boeing* standard for the jury to determine that Crumpton could not or should not have anticipated that his actions at that time would result in his death. Under the evidence presented, there were three probable theories of what had occurred. The first theory was that no rape was ever committed. Ms. Petton did not report the rape immediately, nor did she go to a doctor for tests to confirm the rape until five days later, when it was too late for a conclusive determination. The beneficiary also introduced forensic evidence that no traces of seminal fluid were found on Ms. Petton's dress, nor on the portion of the prophylactic allegedly worn by Crumpton during the rape. Also, the fact that Ms. Petton's accounts of the rape were inconsistent, varying as to the time and place in the version told to the police prior to the shooting and that told after the shooting, presented a credibility issue for the jury. The second theory is that the rape was committed but not by Crumpton. The beneficiary introduced some testimony that Crumpton had been seen ironing just minutes prior to his death and that he had told his sister-in-law less than an hour before his death that he was going to try to find and feed his cat. Thus he could have been looking for his cat when he was mistakenly identified as the rapist by Ms. Petton who panicked and shot him. The third theory is that Crumpton committed the rape.

Even if Crumpton did commit the rape, the jury was not required to find that this action would naturally result in his subse-

---

we do not view this as determinative of the circumstances of this case, which while actually civil, in character is akin to a criminal case. In *Reyes, supra*, we said that the "general rule of exclusion" was applicable to both civil and criminal proceedings. *Reyes*, 589 F.2d at 793

and n.5. Thus by implication, when evidence would be admissible under Rule 404(a) in a criminal case, we think that it should also be admissible in a civil suit where the focus is on essentially criminal aspects, and the evidence is relevant, probative, and not unduly prejudicial.

quent murder. Crumpton, at the time of the shooting, was dressed in house shoes and had left his TV set on. Evidence presented by the beneficiary indicated that the powder markings showed that Crumpton had the back of his hands facing the murder weapon, rather than reaching for the weapon. Ms. Petton testified that she had had no contact with Crumpton between the time of the rape and the shooting five days later. Also, Petton testified that she gave no warning before she fired at Crumpton. Thus the jury, even if it believed that Crumpton had raped Ms. Petton five days earlier, could find that he would not reasonably have anticipated that she would shoot him. In a somewhat analogous situation, where an insured was slain while in the act of intercourse with the assailant's wife, a Texas court stated that the killing of the adulterer was not a natural and probable consequence of the act of adultery. In that case, the court found that an adulterer was not bound to anticipate that his death was the inevitable result of his act. *Great American Reserve Insurance Co. v. Sumner*, 464 S.W.2d 212 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). *See Wallace v. Connecticut General Life Insurance Co.*, 477 F.2d 680, 682 (5th Cir. 1973). While rape and assault are violent actions, one does not necessarily anticipate that the victim will sometime later take the law into her own hands. Had Crumpton been shot at the time of the rape, the question might be a closer one.

We find that there was sufficient evidence from which reasonable men could find that either Crumpton did not rape Ms. Petton and thus had no reason to anticipate that his actions would cause his death or that even if he did rape Ms. Petton, he would not reasonably anticipate her subsequent actions.

AFFIRMED.