Oretta J. STONE (Sawyer, Danny D., deceased wage earner, S.S. # 462–62–0293), Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 82–1374.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1983.

Rehearing Denied Oct. 26, 1983.

James Q. Smith, Wichita Falls, Tex., Michael S. Fawer, New Orleans, La., for plaintiff-appellant.

Anthony W. Vaughn, Asst. U.S. Atty., Fort Worth, Tex., Charlene Seifert, Asst. Reg. Atty., U.S. Dept. of H.H.S., Dallas, Tex., for defendant-appellee.

Before BROWN, WISDOM and JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this case involving a challenge by an ex-spouse to the granting of surviving child's benefits under the Social Security Act to the stepchildren of the deceased wage earner, this court must determine whether the Secretary's decision that the stepchildren of the deceased wage earner were eligible for such benefits is based on substantial evidence in the record as a whole. This determination revolves around the question of whether the wage earner's death was accidental within the meaning of 42 U.S.C. § 416(k)(1) and 20 C.F.R. §§ 404.-335 and 404.357. Because the Secretary's interpretation of that term was permissible, and because we find substantial evidence in the record as a whole to support the Secretary's determination that the wage earner's death was accidental, we hold that the district court's order granting summary judgment in favor of the Secretary was correct and affirm.

### The Facts and Decision Below

The wage earner, Danny Sawyer, and Oretta Stone, the appellant in this case, were divorced by a decree of a Texas court entered on July 7, 1972. Four children, Stephen, Kendell, Robbin, and Paul Sawyer were born of their marriage, and custody was awarded to Oretta.

On September 8, 1975, Joyce Browning was divorced from Jimmy Browning by a Texas decree. Joyce had three children of a previous marriage, Steven, Tammie and James Ball.

Danny Sawyer and Joyce Browning were married in Mexico on August 9, 1975, 30 days before the Browning divorce decree was signed, and 60 days before the 30-day waiting period under Texas law could have expired. On September 27, 1975, nineteen days after the Browning divorce decree was signed but within the 30-day waiting period, Danny died due to stab wounds. Soon thereafter, a grand jury returned an indictment against Joyce charging that she caused the death of Danny Dean Sawyer by stabbing him with a knife.

In the meantime, both Oretta and Joyce filed separate applications for surviving child's benefits on behalf of their respective children. Oretta's four children were found eligible. The determination of the eligibility of the stepchildren was deferred pending the disposition of the charges brought against Joyce for the death of Danny Sawyer.

On April 10, 1978 Joyce entered a plea of guilty to voluntary manslaughter charges with a stipulation of evidence that "On the 27th day of September 1975, in Ector County, Texas, she did then and there intentionally and knowingly cause the death of an individual, Danny D. Sawyer, by stabbing him with a knife, at which time she was laboring under the influence of a sudden passion arising from adequate cause." Joyce was sentenced to a 10-year probated prison term.

In May, 1979, James and Steven Ball, the stepchildren of Danny Sawyer, were determined to have been eligible for surviving child's insurance benefits from September, 1975. Benefits were also awarded Tammie from September, 1975 through August, 1978, the month preceding her marriage. Oretta Stone was notified that, because of Tammie's marriage, Tammie was no longer eligible for benefits and that, therefore, the monthly benefit to Oretta's children would increase. Oretta thereafter objected to the stepchildren's receiving benefits on Danny's earning's record and requested reconsideration of that decision.

A reconsideration notice dated September 6, 1979, affirmed the initial determination that the stepchildren of the deceased wage earner were eligible for surviving child's benefits.

Oretta requested that the decision to grant the stepchildren benefits be considered *de novo* by an administrative law judge of the Social Security Administration. This request was granted and a full hearing was conducted. The ALJ found that the stepchildren of the deceased wage earner were entitled to surviving child's benefits under the Social Security Act. Stone sought review of the decision before the Appeals Council.

After considering all of the evidence in the record, the ALJ's determination, the applicable regulations, and Oretta's arguments in support of her claim, the Appeals Council concluded that there was no basis for granting the appellant's request for review and affirmed the decision of the ALJ awarding benefits to the stepchildren. Oretta sought judicial review pursuant to 42 U.S.C. § 405(g).

On review, cross-motions for summary judgment were filed by Oretta and by the Secretary. On June 22, 1982, the district judge granted the Secretary's motion for summary judgment which had the effect of affirming the Secretary's decision that the deceased wage earner's stepchildren were entitled to benefits under the Social Security Act and regulations. Oretta appeals.

*Discussion*

Oretta seeks to terminate Social Security benefits which are being received by Danny's stepchildren.[1] To be eligible for such benefits, the stepchildren must meet the requirements of 42 U.S.C. § 416(e)(2) which provides for benefits to be paid to

(2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed or (if the insured individual is deceased) not less than nine months immediately preceding the day on which such individual died . . .

Since Danny died only 47 days after his marriage to Joyce, his stepchildren would be ineligible for Social Security benefits as not having met the nine-month requirement of § 416(e)(2) were it not for an exception to this general rule.

---

1. It appears initially that the Ball children are not properly classified as stepchildren. As pointed out by the facts, the marriage of Danny and Joyce is of questionable validity because it took place 30 days before the Browning divorce decree was signed and 60 days before the 30-day waiting period under Texas law could have expired. The Social Security regulations, however, provide for this contingency when they state:

> For purposes of clause (2), a person who is not the stepchild of an individual shall be deemed the stepchild of such individual if such individual was not the mother or adopting mother or the father or adopting father of such person and such individual and the mother or adopting mother, or the father or

adopting father, as the case may be, of such person went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of subsection (h)(1)(B) of this section, would have been a valid marriage.

42 U.S.C. § 416(e)(3). Such impediments, according to the regulations, include impediments resulting from "a lack of dissolution of the previous marriage or otherwise arising out of such previous marriage or its dissolution." 42 U.S.C. § 416(h)(1)(B). Thus, despite the fact that the marriage of Joyce and Danny may have been invalid for other purposes, under the Social Security regulations, it is deemed valid.

Under the regulations,

[t]he requirement in subsection (e) of this section that the stepchild of a deceased individual have been such stepchild for not less than nine months immediately preceding the day on which such individual died in order to qualify as such individual's child, shall be deemed to be satisfied, where such individual dies within the applicable nine-month period, if—

(1) his death—

(A) is accidental,

42 U.S.C. § 416(k). Thus, the central issue in this case is whether or not the death of Danny was accidental. Under the facts of the present case and in accordance with the above statutory provisions, only if Danny's death was accidental would his stepchildren be entitled to benefits.

The Social Security regulations define "accidental" as follows:

For purposes of paragraph (1)(A) of this subsection, the death of an individual is accidental if he receives bodily injuries solely through violent, external, and accidental means and, as a direct result of the bodily injuries and independently of all other causes, loses his life not later than three months after the day on which he receives such bodily injuries.

42 U.S.C. § 416(k). In addition, 20 C.F.R. 404.1114(b) [2] (1979) further defines accidental death as "an event that was unpremeditated and unforeseen from the standpoint of the deceased individual." In this regard, homicides are considered accidental "unless the deceased clearly provokes his death by an assault or other provocation." *Social Security Claims Manual, § 2474.4.*[3] Oretta argues that by pleading guilty to voluntary manslaughter, thereby admitting that she "intentionally and knowingly caused the death of Danny by stabbing him with a

knife, at which time she was laboring under the influence of sudden passion arising from adequate cause", Joyce judicially admitted that the decedent provoked his own death which was reasonably foreseeable by him at the time. Thus, Oretta argues that it was not reasonable for the Secretary or his delegate to presume that Danny's death was accidental. We disagree.

We observe initially that much deference is due the interpretation given a statute by the agency charged with its administration. "To sustain the Commission's application of a statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), *quoting, Unemployment Commission v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); *see also, e.g., Gray v. Powell,* 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941); *Universal Battery Co. v. United States,* 281 U.S. 580, 583, 50 S.Ct. 422, 423, 74 L.Ed. 1051 (1930). "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the man charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.'" *Power Reactor Co. v. Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed. 924 (1961). When the construction of an administrative regulation rather than a statute is issued, deference is even more clearly in order. *Udall,* 380 U.S. at 16, 85 S.Ct. at 801.

Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative

---

**2.** 20 C.F.R. 404.1114(b), relied upon by the district court, has been replaced by 20 C.F.R. 404.335(a)(2)(i) (1982), which reads as follows: "The death is accidental if it was caused by an event that the insured did not expect."

Counsel for Oretta Stone suggests that this alteration indicates a substantive change in the regulations. We do not agree. As the preamble to the current regulations states, all that has taken place is a recodification. "The pri-

mary purpose of this recodification is to restate the rules so that they will be easier for the public to understand and use." 20 C.F.R. § 404.335, 44 Fed.Reg. 34479 (June 15, 1979).

**3.** This information is now contained in identical form in the *Program Operations Manual* (POMS) of the Social Security Administration, GN 00305.320(C), which was issued in 1981 to replace the *Claims Manual.*

construction of the regulation if the meaning of the words used is in doubt.... [T]he ultimate criterion is the administrative interpretation, which becomes the controlling weight unless it is plainly erroneous or inconsistent with the regulation.

*Id.* at 16–17, 85 S.Ct. at 801–802, *quoting Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

This is particularly true of the Social Security Administration: "The Social Security Act is among the most intricate ever drafted by Congress.... Perhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the act." *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1982). Thus, in certain circumstances, the Secretary's definition of a term is "entitled to more than mere deference or weight," and is instead entitled to "legislative effect" because "Congress entrusts to the Secretary rather than the courts the primary responsibility for interpreting the statutory term." *Batterton v. Francis,* 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977). *See also Gray Panthers,* 453 U.S. at 43, 101 S.Ct. at 2639.

■ We need not determine whether such high deference is due the agency's interpretation of the Social Security statutes and regulations in the Claims Manual here because we conclude that the agency's construction of the term "accidental" to include homicide is a reasonable inference from the Social Security statutes and regulations.

■ Texas cases—the state in which the homicide occurred—also comport with the agency's interpretation of its statutes and regulations. In Texas insurance cases, which this court at oral argument characterized as "strikingly similar" to the matter here, a presumption of accidental death from evidence of death by violent and external means has been recognized. *Crump-*

*ton v. Confederation Life Insurance Co.,* 672 F.2d 1248, 1254 (5th Cir.1982); *Republic National Life Insurance Co. v. Heyward,* 536 S.W.2d 549, 558 (Tex.1976). "[T]he test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured." *Heyward,* 536 S.W.2d at 552 (*quoting Hutcherson v. Sovereign Camp, W.O.W.,* 112 Tex. 551, 251 S.W. 491 (1923)). If from the viewpoint of the insured his conduct was such that he should have anticipated that in all reasonable probability he would be killed, his death is not accidental. *McGowen v. Travelers Insurance Co.,* 448 F.2d 1315 (5th Cir.1971). "Unless some evidence to the contrary is produced, we think it is reasonable to presume that insured did not act in such a way that he should have reasonably known his actions would probably result in his death. The law assumes that one's natural instinct is to avoid injury and preserve his own life." *Heyward,* 536 S.W.2d at 559. This presumption of accidental death has also been recognized by the majority of American jurisdictions. Annot., 12 A.L.R.2d 1264 (1950).

■ Having concluded that the agency's interpretation of the term "accidental" in its Claims Manual was a reasonable construction of the statutes and regulations it administers, we have only to determine whether the Secretary's determination that Danny's death was accidental was supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). An agency's findings will be upheld if supported by reasonable inferences which can be properly drawn from the record evidence. *Lieberman v. Califano,* 592 F.2d 986 (7th Cir.1979); *Futernick v. Richardson,* 484 F.2d 647 (6th Cir.1973). However, this court may not reweigh the evidence or substitute its own judgment for that of the Secretary. *Salinas v. Schweiker,* 662 F.2d 345 (5th Cir.1981); *Laffoon v. Califano,* 558 F.2d 253 (5th Cir.1977).

■ Under the Social Security regulations and pursuant to instructions in the Social Security Claims Manual, the Secretary must fully develop the circumstances of a wage earner's death before making a determination that his stepchildren are eligible for surviving child's benefits.[4] The administrative record developed here gives little clue as to what provoked Joyce to kill her husband. Joyce herself has been unwilling or unable to talk about the circumstances surrounding her husband's death and her very young daughter, who was present at the time of Danny's death, could provide no information about an argument, assault, or other provocative act of the deceased from which he could reasonably have foreseen would have resulted in deadly retaliation. The only indication of the nature of the "adequate cause" here is that contained the Report of Contact dated May 26, 1976, in which the stepdaughter is reported to have seen Joyce go into the kitchen and get a knife, and later to have seen the deceased return to the kitchen bleeding and with the knife in his hand. There is no additional evidence of provocative acts. On this basis, we hold that the Secretary's determination that Danny's death was accidental was proper under the regulations and interpretation given those regulations by the agency.

This is true even though Joyce pleaded guilty to voluntary manslaughter. Under the Texas statutes, "adequate cause" sufficient to reduce a charge of murder to the lesser included offense of voluntary manslaughter, means a cause that would commonly produce a degree of "anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection." Texas Penal Code Ann. § 19.04 (Vernon 1974). Texas law does not require a physical assault or violent argument to satisfy the provocation requirement. Because neither the ALJ nor the state court which received Joyce's plea had any evidence indicating which of the enumerated causes provoked Joyce to kill her husband, it would be manifestly improper for this court to presume that the existence of "adequate cause" renders the decedent's death not accidental under the regulations. As the court in *Heyward* pointed out, "The law assumes that one's natural instinct is to avoid injury and preserve his own life." *Heyward*, 536 S.W.2d at 559. Thus, the district judge flatly stated that "[S]ince Danny D. Sawyer had no knowledge that his wife would kill him, it is defined as an accidental death pursuant to the regulation." Memorandum Opinion and Order at 4. In light of the regulations, Texas cases, Social Security procedures, and Texas statutes, we see no reason to disturb his common sense conclusion.[5]

AFFIRMED.

---

4. If the death certificate classifies the death as homicide, complete development of the circumstances of the death, including police or coroner reports, must be obtained, if not already secured under sections 2292–2293 as part of the development to see if a claimant was involved in the WE's death. A homicide will be considered an accidental death unless the deceased clearly provoked his death by assault or other provocation (Section 2474.-3(b). The decedent's provocative act must have been of such a nature that he could reasonably have expected a fatal shot or blow in retaliation. (Emphasis added)

Social Security Claims Manual, Section 2474.-4(c).

5. We agree with the District Judge that this may be a case where the statutes and regulations "sweep more broadly than the evils with which they seek to deal." The idea of permitting a "wrongdoer" to reap the benefits of her wrong under these circumstances strikes us as does the tale of the child who kills his parents then begs for mercy because he is an orphan. Yet despite our distress at the result, this is a case where the task of emendation is one more properly subject to legislative judgment than to judicial legislating.